**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Daisy Mae JOHNSON, Defendant–
Appellant.**

**No. 94–3118.**

United States Court of Appeals,
Tenth Circuit.

June 13, 1995.

---

Robin D. Fowler, Asst. U.S. Atty., Kansas City, KS (and Randall K. Rathbun, U.S. Atty., with her on the briefs), for plaintiff-appellee.

David J. Phillips, Federal Public Defender, Kansas City, KS, for defendant-appellant.

Before EBEL and KELLY, Circuit Judges, and COOK, Senior District Judge.[1]

EBEL, Circuit Judge.

A jury convicted Defendant–Appellant Daisy Mae Johnson ("Johnson") of possessing cocaine with intent to distribute under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting), and of using a communication facility to commit or facilitate the possession of cocaine with intent to distribute under 21 U.S.C. § 843(b) and 18 U.S.C. § 2 (aiding

---

**1.** The Honorable H. Dale Cook, Senior United States District Judge for the Northern District of  Oklahoma, sitting by designation.

and abetting). Johnson moved for judgment of acquittal based on insufficiency of the evidence on the mens rea elements of the § 841(a)(1) and § 843(b) crimes. The district court denied Johnson's motion and she brought this appeal. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## FACTS

The following evidence was presented to the jury at trial. On September 2, 1988, Johnson arrived at the Federal Express office at the Los Angeles International Airport to mail a package. Undercover Officers Patti May and Michael Farrant, narcotics detectives with the Los Angeles Police Department, were stationed at the office to help identify packages that might contain illicit drugs. Officer May first noticed Johnson because Johnson arrived only five minutes before the office's 7:00 p.m. closing time, the last Federal Express drop time in the city at the only Federal Express location where packages are loaded directly onto planes for shipment, two characteristics that drug traffickers find attractive.

Johnson also drew Officer May's attention because she was concealing her small package inside a large, white, plastic shopping bag, which May explained was somewhat unusual. Officer May testified that Johnson was very nervous, constantly looking "from side to side," "back and forth," and "around behind her," and seemed afraid to take her package out of the bag. After scanning the office, Johnson immediately filled out a shipping airbill without being instructed to do so, which May explained demonstrated unusual familiarity with the Federal Express process.

When Johnson took her place in line, she "clutched the package close to her," and continued to look around and behind her in an "extremely nervous" fashion. When Johnson removed her package from the bag, Officer May noticed that it was very heavily taped, which she explained is often characteristic of a package containing drugs. Officer May testified that Johnson's persistent nervousness became increasingly focused on the package—she seemed "very concerned" about whether the tape would stick properly and repeatedly pressed the tape down to make sure that it would not come undone. Officer Farrant corroborated this description, testifying that Johnson was "kneading the package," repeatedly trying to press the tape down to ensure that it was properly sealed.

Johnson paid cash to ship her package, including an additional ten dollars to guarantee overnight delivery, which Officer May explained is also consistent with a drug shipment. As Johnson drove away from the office, another officer recorded her license plate number. A computer check on the plate revealed that Johnson's true address matched the return address she had written on the airbill. However, Johnson had written the name "Crashenda Jackson" as the package's sender. A computer check uncovered no driver's license or other record in California for a "Crashenda Jackson" at Johnson's address.

After Johnson left the Federal Express office, Officer May arranged a test by a narcotics detection dog, and the dog positively alerted to Johnson's box. May noted that the box was being sent to Kansas City, Missouri, so she contacted Agent Carl Hicks, a narcotics agent with the Drug Enforcement Administration in Kansas City, and described the package and the dog's positive alert. After obtaining a search warrant, Agent Hicks opened Johnson's package and found approximately one kilo of powdered cocaine with an estimated street value of $200,000.

When Agent Hicks attempted a controlled undercover delivery to the recipient that Johnson had written on the airbill—a "Mary Jone" at 4329 Freeman in Kansas City, Missouri—he discovered that the address did not exist. Someone telephoned Federal Express, however, explaining that the correct address should be 4529 Freeman in Kansas City, Kansas. Agent Hicks testified that sending a package to a fictitious address that is later corrected by phone is a tactic that drug traffickers commonly use to help avoid identification in case the shipment is intercepted by the police. Agent Hicks made the delivery to the new address where a woman signed for the package as "Mary Jones." She was promptly arrested, admitted that her real name was Janice Swift, and claimed

that she was receiving the shipment to further her boyfriend's drug distribution scheme. A search of Swift's home uncovered a significant amount of additional cocaine.

Based on this evidence, a jury convicted Johnson of possessing cocaine with intent to distribute and of using a communication facility to possess cocaine with intent to distribute.[2] Johnson moved for judgment of acquittal based on insufficiency of the evidence on the mens rea elements of both offenses. The district court denied her motion, and she renews her challenge on this appeal.

### DISCUSSION

■ We review the record for sufficiency of the evidence de novo. *United States v. Chavez–Palacios*, 30 F.3d 1290, 1294 (10th Cir.1994). "Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, viewed in a light most favorable to the government." *United States v. Mains*, 33 F.3d 1222, 1227 (10th Cir.1994).

■ To sustain a conviction under 21 U.S.C. § 841(a)(1), the government had to bring sufficient evidence to prove that Johnson knowingly possessed a controlled substance and intended to distribute it. *See Mains*, 33 F.3d at 1228. To sustain a conviction under 21 U.S.C. § 843(b), the government had to bring sufficient evidence to prove that Johnson knowingly or intentionally used a communication facility to commit or facilitate the possession of cocaine with intent to distribute. *United States v. Willis*, 890 F.2d 1099, 1103 (10th Cir.1989). Johnson contends that there was insufficient evidence to prove the "knowing" and "intentional" elements of these two offenses.

Although we agree that the mens rea evidence presented at trial was minimal, we cannot say that no reasonable jury could have inferred from the testimony and circumstances described that Johnson knew her package contained a controlled substance, in-

tended to distribute it, and thus knowingly or intentionally used a communication facility to do so. The fact that the government proved Johnson's mental state largely, if not entirely, by combining various pieces of circumstantial evidence, perhaps none of which would independently be considered "sufficient," does not alter this conclusion. *See United States v. Grimes*, 967 F.2d 1468, 1470 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992); *United States v. Hooks*, 780 F.2d 1526, 1529–30, 1532 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). "[R]ather than examining the evidence in bits and pieces," we evaluate the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." *Hooks*, 780 F.2d at 1532.

■ We do not use this evaluation as a chance to second-guess the jury's credibility determinations, nor do we reassess the jury's conclusions about the weight of the evidence presented. *Chavez–Palacios*, 30 F.3d at 1294; *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir.1993). We determine only if the "collective inferences" from the totality of that evidence could have led a rational jury to find beyond a reasonable doubt that Johnson possessed the requisite knowledge and intent.

Applying these standards of review, while keeping in mind that the evidence is viewed in the light most favorable to the government, we find the combination of several pieces of evidence sufficient for a reasonable jury to conclude that Johnson knew her package contained a controlled substance.

First, we look at the evidence of Johnson's extreme and persistent nervousness, as described by Officers May and Farrant. It is true that in other contexts we have often expressed reservations about drawing conclusions from a defendant's nervous demeanor. *E.g., United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir.1994) (finding defendant's nervousness "of limited significance" in determining reasonable articulable suspicion to continue an investigative stop); *United*

---

**2.** Swift was charged as a co-defendant in this case, but she pled guilty before trial to possession of cocaine with intent to distribute.

*States v. Peters*, 10 F.3d 1517, 1521 (10th Cir.1993) (same); *United States v. Hall*, 978 F.2d 616, 621 & n. 4 (10th Cir.1992) (finding defendant's nervous behavior "of little significance" to support reasonable suspicion to seize and open a suitcase). Those cases, however, involved generalized nervousness displayed in response to a police encounter. *See Fernandez*, 18 F.3d at 879 (noting that "most citizens" exhibit some signs of nervousness when confronted by officers asking potentially incriminating questions); *Peters*, 10 F.3d at 1521; *Hall*, 978 F.2d at 621.

■ Here, in contrast, Johnson displayed more than generalized nervousness, and her behavior could not be explained as an understandable response to a police encounter, because she was never approached by Officers May and Farrant, whose plain-clothed attire could not have alerted her to their presence. Instead, Johnson's nervousness was specifically directed at the package in question: she concealed the package in a shopping bag, "clutched" the package close to her, and continually pressed its heavily taped edges, "kneading" the tape to ensure that it would not come undone. We find that a reasonable jury, entitled to deem Officer May's and Farrant's descriptions credible, could have found this excessive concern targeted specifically at the package as evidence that Johnson knew the package contained a controlled substance.

A jury's reasonable inference of Johnson's knowledge is supported, secondly, by the fact that Johnson lived at the residence she identified as the package's return address, and the fact that she attached a false name to that address. A jury could reasonably infer Johnson's involvement in preparing the package from the former piece of evidence, and her understanding of the contents' illegality from the latter. *Hooks*, 780 F.2d at 1532 ("[T]he jury could have inferred appellant's guilty knowledge [that a controlled substance was hidden in the vehicle he was driving] from the undisputed testimony that appellant gave the police a false name." That evidence when considered in conjunction with other circumstantial evidence, held sufficient to sustain conviction.).

■ Similarly probative of Johnson's guilty knowledge is the fact that Johnson listed on the airbill a false name and nonexistent address for the package's destination. Officer Hicks testified that this was a common tactic among drug traffickers trying to hinder police efforts to trace a package. The jury was entitled to deem that testimony credible, believe that Johnson was making use of that tactic, and rationally infer that she knew what her package contained. Johnson argues that this evidence holds no probative force, however, because a jury could also have reasonably inferred that she simply made an innocent mistake. The fact that the evidence may also be consistent with a hypothesis of innocence, however, does not require reversal where there is sufficient evidence to support a guilty inference as well. *Hooks*, 780 F.2d at 1530.

These three facts must also be considered in light of additional testimony by Officer Hicks, who explained his understanding of typical drug courier behavior from his seventeen years of experience. Hicks said that he believed drug couriers "always know" the contents of the packages they transport because dealers will not risk entrusting an ignorant person with such valuable contraband—in this case, $200,000 of cocaine. Although one could question the accuracy of this testimony as an empirical matter, we must nevertheless assume for purposes of this review that the jury found this testimony to be credible. *See Chavez–Palacios*, 30 F.3d at 1294; *Hooks*, 780 F.2d at 1532 (DEA agent's testimony that the drugs at issue were worth $10,000 "supports the jury's finding that appellant knowingly possessed the PCP" because it was "unlikely that ... anyone else[ ] would have left such a valuable substance" in appellant's possession). Thus, based on this testimony, along with the facts that Johnson directed unusual nervousness towards the package, wrote someone else's name as the package's sender, and provided a nonexistent recipient and shipping address, we conclude that a reasonable jury could have found beyond a reasonable doubt that Johnson knew her package contained a controlled substance.

Having found sufficient evidence that Johnson knew what her package contained, we believe a jury could also reasonably have inferred that Johnson intended to distribute those contents when she mailed the package to an alleged drug dealer in Kansas City. Officer Hicks also testified to the unlikelihood that such a large quantity of cocaine would be possessed for purely personal use, and again the jury is entitled to believe that assessment. *See United States v. Levario,* 877 F.2d 1483, 1486 n. 2 (10th Cir.1989) (holding that the large quantity of drugs at issue constitutes sufficient evidence to support a finding of intent to distribute); *Hooks,* 780 F.2d at 1532 (where there was sufficient evidence to prove knowing possession of PCP, the large quantity involved was sufficient to prove intent to distribute).

Because we find that a reasonable jury could have concluded that Johnson knew the package contained a controlled substance and intended to distribute it, we also find that a jury could reasonably have inferred that Johnson knowingly or intentionally used a communication facility, Federal Express, to facilitate the commission of that offense.

### CONCLUSION

Viewing the record in the light most favorable to the government and giving due deference to the jury's assessment of the evidence and witness credibility, we conclude that a rational jury could have found beyond a reasonable doubt that Johnson possessed the mens rea required for both offenses. Accordingly, the district court properly denied Johnson's motion for judgment of acquittal based on insufficiency of the evidence and we AFFIRM.