**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 3 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 98-2162

ENRIQUE LAZCANO-VILLALOBOS,

Defendant-Appellant.

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-97-98-HB)**

Fred J. Federici (John J. Kelly, United States Attorney, with him on the brief), Assistant United States Attorney, Las Cruces, New Mexico, for Plaintiff-Appellee.

Robert Ramos (Robert J. Perez with him on the brief), El Paso, Texas, for Defendant-Appellant.

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

**BRORBY**, Circuit Judge.

Defendant-Appellant Enrique Lazcano-Villalobos[1] appeals his jury conviction on one count of violating 21 U.S.C. § 841(a)(1) for "Possession With Intent to Distribute More Than 5 Kilograms and More of Cocaine. Mr. Lazcano-Villalobos argues the district court erred in (1) denying his motion for acquittal even though the evidence did not show he knew about the cocaine, and (2) allowing the jury to consider prejudicial evidence of his prior narcotics case in violation of Federal Rule of Evidence 404(b). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm Mr. Lazcano-Villalobos' conviction.

FACTUAL BACKGROUND

On February 1, 1997, Mr. Lazcano-Villalobos and his wife entered the United States Border Patrol checkpoint on Highway 70 near Alamogordo, New Mexico, driving a late-model Ford with Colorado plates. Border Patrol Agent Bradley Williams approached their vehicle and began questioning them about their citizenship. In response, Mr. Lazcano-Villalobos handed over his immigration card. As he held the card, Agent Williams noticed Mr. Lazcano-Villalobos' hand shaking. When questioned about their destination, Mr. Lazcano

---

[1] This appeal was docketed in the district court and in this court with the defendant's name as "Lazcano Enriquez-Villalobos." We note the district court judge corrected defendant's name on the instructions and the Judgment to read "Enrique Lazcano-Villalobos.

stated they were returning home to Colorado after spending a week visiting his wife's brother in El Paso, Texas. As Agent Williams visually examined the vehicle driven by Mr. Lazcano-Villalobos, he noticed the car was very clean on the exterior and interior. Mr. Lazcano-Villalobos consented to Agent Williams' request to examine the trunk, but the search revealed no luggage or toiletries to support Mr. Lazcano-Villalobos' claim of vacationing for a week.

Returning to the driver's side of the vehicle, Agent Williams detected a "strong odor of air freshener or something" coming from inside the car. He knew the odor could signify a covering scent for narcotics. Agent Williams then received Mr. Lazcano-Villalobos' permission to walk a narcotics-detecting dog around the car. The dog alerted to the car's dash or windshield and the rear of the front fender. On examination of the car's interior, border patrol agents discovered a hidden compartment which could not be seen without taking the dash apart. During disassembly, Agent Williams noticed the top and undersides of the glove compartment and dash contained no dust and looked immaculate. A search of the hidden compartment produced ten bundles of ninety-two percent pure cocaine, weighing 4,467 grams and ranging in value between $80,000 (wholesale) and $450,000 (street value). After discovering the drugs, border patrol agents arrested Mr. Lazcano-Villalobos and his wife, who carried approximately $2,300

in cash comprised of $20 bills and smaller denominations. An experienced Drug Enforcement Administration agent later testified $2,500 is a reasonable courier's fee for transporting cocaine from New Mexico to Denver, Colorado, and that couriers are usually paid in cash denominations of $20 or less.

Further inspection of the car's interior following the arrest revealed a number of receipts showing cash purchases made the day of the arrest. One receipt showed a cash purchase at the Good Time Store at 9:33 a.m. Another receipt matched cash purchases made later that day at Starr Western Wear in El Paso, Texas. A cash receipt from the Flying J Travel Plaza at Anthony, New Mexico corresponded to the prices on two "tree" air fresheners and a bottle of spray deodorant found in the car. Finally, a Super 8 Motel receipt with Mr. Lazcano-Villalobos' name on it reflected a $120 cash payment two weeks earlier on January 13, 1997. An experienced United States Border Patrol Agent testified drug couriers commonly make cash purchases so their movements cannot be traced.

On examining the car's interior, agents also discovered a cellular telephone under the front passenger seat. The telephone was registered to Omar Navarro, but telephone records showed calls to Mr. Lazcano-Villalobos' father-in-law and

several telephone numbers matching numbers written in an address book and on miscellaneous pieces of paper and business cards found in Mr. Lazcano-Villalobos' possession. In addition, Mr. Lazcano-Villalobos' wallet contained a cellular card with a "lock code" matching the cellular telephone.

Using the United States Customs Service's data base, the cellular telephone records, the dates and locations on the cash receipts, and other papers found in the car and on Mr. Lazcano-Villalobos, agents tracked Mr. Lazcano-Villalobos' movements in the weeks prior to his arrest. While purely circumstantial, this evidence shows Mr. Lazcano-Villalobos repeatedly traveled in and out of Mexico, using the same car and cellular phone, during the period from December 30, 1996 to the date of his arrest on February 1, 1997. As to the day of his arrest, the receipts found in Mr. Lazcano-Villalobos' possession show he traveled north from the Mexican border through El Paso, Texas and Anthony, New Mexico until his arrest at the check point on Highway 70. A United States Border Patrol Agent testified Highway 70 is a less direct route from El Paso to Alamogordo than Highway 54, but used frequently by drug couriers because its checkpoint is closed more often.

Mr. Lazcano-Villalobos testified at trial, but his version of the facts

differed substantially from his statements to the border patrol agent, the physical evidence showing the dates of his repeated border crossings from Denver to Chihuahua, Mexico, and even portions of his own testimony on cross-examination. Specifically, Mr. Lazcano-Villalobos testified he lived in Modesto, California, but told Agent Williams he and his wife were traveling home to Colorado. He offered a complicated, if not convoluted, series of events to explain his reasons for crossing back and forth into Mexico. He began by testifying that shortly before Christmas 1996, he, his wife and his nephew, Omar Navarro, left California in his truck and traveled to his father-in-law's house in El Paso where they dropped off gifts, and then traveled to visit his siblings in Parral, Mexico and his mother on a ranch an hour away. Mr. Lazcano-Villalobos testified that on learning of his mother-in-law's ill-health on January 8 or 9, 1997, the three of them immediately left Parral by bus for Denver, without going to the ranch to pick up their clothes, luggage, or truck.

According to Mr. Lazcano-Villalobos, he and his wife left Denver January 13 or 14 to return to Mexico, leaving their nephew behind. On arriving at his sister's house in Parral, they learned of his mother-in-law's imminent operation and immediately returned to Denver, again leaving their clothes and luggage at the ranch, but obtaining his truck from siblings in Parral. Mr. Lazcano-Villalobos

testified that, en route to Denver, his truck broke down on the outskirts of Ciudad Juarez, Mexico, where they stayed for a day or two waiting for the truck to be repaired. Mr. Lazcano-Villalobos testified that on learning of a delay in repairs, he and his wife finally took a taxi to El Paso, where they made the cash purchase at the Starr Western Wear store.

After this purchase, they "were at the point of going to the airport" to catch a flight to Denver, when they encountered an acquaintance, Cristino Gutierrez. On learning of their "emergency trip" to see his mother-in-law, Mr. Gutierrez offered them his car. Mr. Lazcano-Villalobos testified he and his wife spent that night, January 31, 1997, at his father-in-law's house in El Paso and left the following day for Denver in Mr. Gutierrez's Ford. As for the deodorant and air fresheners found in the car and purchased the day of his arrest, he explained he purchased them because his cigarette smoke bothered his wife.

During this account, Mr. Lazcano-Villalobos failed to explain his whereabouts during the time he left Ciudad Juarez, Mexico, where his truck broke down, until his cash purchase sixteen days later at the Starr Western Wear Store on February 1, 1997. On cross-examination, he testified that after his truck broke down, he and his wife returned to Parral and stayed there from January 16 to

February 1, 1997. However, Mr. Lazcano-Villalobos offered no testimony explaining how the cellular telephone he admitted using in Mexico on January 18 or 19, 1997, and later on January 31, 1997, was used in El Paso and Denver during the time he was allegedly stranded in Parral, Mexico. Moreover, Mr. Lazcano-Villalobos' testimony claiming he spent the last week in Parral and the night of January 31, 1997 at his father-in-law's house in El Paso differed from his statement to Agent Williams that he and his wife were in El Paso for approximately a week visiting his wife's brother.

Discrepancies as to Mr. Lazcano-Villalobos' whereabouts continued when he admitted he used the cellular telephone to make calls on the evening of January 31, 1997 from Chihuahua, Mexico, even though he testified earlier he spent that night in El Paso, Texas at his father-in-law's. In an apparent effort to show how he came into possession of the cellular telephone and that someone else could have made the calls, he recanted his earlier testimony that his nephew, who owned the telephone, did not return to Mexico.

Other discrepancies existed in Mr. Lazcano-Villalobos' testimony. While Mr. Lazcano-Villalobos claimed he only received the car from Mr. Gutierrez on January 31, 1997, the Super 8 Motel receipt found in the car dated January 13,

1997 and bearing Mr. Lazcano-Villalobos' name indicates he possessed the vehicle two weeks earlier. With respect to the $2,300 in cash found in his wife's possession at their arrest, evidence presented at the trial showed Mr. Lazcano-Villalobos' and his wife's net annual income totaled just over $10,000. This, together with evidence of his comparatively extensive expenses and credit card debt, suggests Mr. Lazcano-Villalobos was struggling financially. Notwithstanding his financial status, Mr. Lazcano-Villalobos explained the $2,300 in cash in his wife's possession came from her savings and an income tax refund.

At trial, both after the government presented its case-in-chief and at the conclusion of the case, Mr. Lazcano-Villalobos moved for judgment of acquittal under Fed. R. Crim. P. 29(a), arguing insufficient evidence existed to establish the elements of the offense of possession with intent to distribute cocaine. (*Id*. at 204-05, 265.)

## ANALYSIS

### Sufficiency of the Evidence

Mr. Lazcano-Villalobos argues the evidence is insufficient to establish he knowingly possessed the cocaine found in the hidden compartment of the car he

drove. Specifically, he suggests the district court erred in denying his motion for acquittal because the government relied on "inference built upon speculative inference" to establish he knew of the hidden cocaine.

Our standard of review on a motion for acquittal is the same as the trial court's in ruling on the motion in the first instance, which is *de novo*. *United States v. Miles*, 772 F.2d 613, 615 (10th Cir. 1985). We review the evidence in the light most favorable to the government and "'then determine whether there is substantial evidence from which a jury might properly find the accused guilty beyond a reasonable doubt.'" *Id.* (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)). In evaluating the evidence under this standard, the court will not question the jury's credibility determinations or its conclusions about the weight of the evidence. *See United States v. Johnson*, 57 F.3d 968, 971 (10th Cir. 1995).

Having established our standard of review, we must determine whether sufficient evidence supports the district court's denial of the motion for acquittal and the jury's verdict that Mr. Lazcano-Villalobos possessed the contraband at issue. A person constructively possesses contraband when he or she knowingly holds ownership, dominion or control over the object and premises where it is

found.  *See United States v. Taylor*, 113 F.3d 1136, 1144-45 (10th Cir. 1997); *United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994).  An inference of knowledge arises if the defendant had *exclusive* possession of the object or premises.  *See Taylor*, 113 F.3d at 1145; *Mills*, 29 F.3d at 549.

While exclusive possession may support an inference of constructive possession, we have also held that joint occupancy of vehicle or premise cannot sustain such an inference.  *See, e.g., Taylor*, 113 F.3d at 1145.  Thus, Mr. Lazcano-Villalobos' joint occupancy of the vehicle with his wife is not sufficient in this case to establish an inference of constructive possession.  To prove constructive possession where there is joint occupancy, the government must present direct or circumstantial evidence to show some connection or nexus individually linking Mr. Lazcano-Villalobos to the contraband.  *Id.*  While "'caution must be taken that the conviction not be obtained by "piling inference on inference,"'" an inference of constructive possession is reasonable if the conclusion flows from logical and probabilistic reasoning.  *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (quoting *Direct Sales Co. v. United States,* 319 U.S. 703, 711 (1943)).  Thus, the government must present evidence supporting at least a plausible inference Mr. Lazcano-Villalobos knew of the contraband.  *See Taylor*, 113 F.3d at 1145.

-11-

In this case, we find ample evidence to support Mr. Lazcano-Villalobos' knowing possession of cocaine. Direct and circumstantial evidence [2] shows Mr. Lazcano-Villalobos used the late model Ford containing the drugs from December 30, 1996 until his arrest on February 1, 1997. Information from the United States Customs Service's data base, cellular telephone records, and the receipts, business cards and other papers in Mr. Lazcano-Villalobos' possession, shows he used the vehicle and cellular telephone during repeated border crossings between Denver, Colorado and Chihuahua, Mexico. These repeated crossings into Mexico raise an inference of Mr. Lazcano-Villalobos' drug courier activities and knowing transportation of drugs.

In addition, numerous plausible inferences flow from the evidence presented. For instance, Mr. Lazcano-Villalobos' purchase of air fresheners the same day border patrol agents discovered the cocaine allows a jury to reasonably infer his knowledge of the cocaine and attempt to mask its odor. Mr. Lazcano-Villalobos made all cash purchases during his trip, a common tactic used by drug

---

[2] "[C]ircumstantial evidence, taken together with any reasonable inferences which flow from such evidence, is sufficient to establish guilt beyond a reasonable doubt." *United States v. Francisco-Lopez*, 939 F.2d 1405, 1408 (10th Cir. 1991). However, the evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt. *See Taylor*, 113 F.3d at 1144.

couriers to avoid leaving a paper trail. In addition, the immaculate condition and absence of dust in the interior and exterior portions of the dash and glove compartment, could allow a jury to infer Mr. Lazcano-Villalobos recently hid the cocaine. At the check point, Mr. Lazcano-Villalobos' hand shook, evidencing his nervousness and knowledge of the hidden cocaine. The lack of clothing and luggage en route from an alleged vacation raises a suspicion of drug trafficking. Similarly, large sums of cash, such as the $2,300 in his wife's possession, and cellular telephones are recognized tools of the drug-dealing trade. *See United States v. Slater,* 971 F.2d 626, 637 (10th Cir. 1992). Finally, Mr. Lazcano-Villalobos' use of Highway 70 – a less direct route for his alleged "emergency" travel and a route that avoids an open border patrol checkpoint – allows a jury to infer drug trafficking activity and Mr. Lazcano-Villalobos' knowing possession of the cocaine.

Mr. Lazcano-Villalobos' testimony, presented after the government's case-in-chief, did little to counter the government's evidence. If anything, the inconsistent and conflicting testimony added to the government's case by undermining Mr. Lazcano-Villalobos' credibility. In convicting Mr. Lazcano-Villalobos, the jury reasonably rejected as implausible his explanation for his repeated border crossings, lack of clothing or luggage, purchase of the air

fresheners, and the source of the $2,300 in cash.[3]

The evidence, while mostly circumstantial and built in part on inferences, logically links Mr. Lazcano-Villalobos with knowledge of the cocaine.[4] Thus, we find the evidence was substantial and sufficient to support Mr. Lazcano-Villalobos' conviction for knowingly possessing the contraband. For that reason, the district court did not err in denying Mr. Lazcano-Villalobos' motion for acquittal at the close of the government's case-in-chief or at the close of all the evidence.

Having found the district court properly denied Mr. Lazcano-Villalobos' motions for acquittal on the standards applied to joint occupancy of a vehicle, we find it unnecessary to address his request we abandon our holding in *United States v. Levario*, 877 F.2d 1483, 1485-86 (10th Cir. 1989), that it is "permissible to

---

[3] Because Mr. Lazcano-Villalobos testified on his own behalf, the district court could examine all the evidence in ruling on his renewed motion for acquittal at the close of the evidence, rather than limit its review to the evidence presented in the government's case-in-chief. *See United States v. Alejandro*, 118 F.3d 1518, 1521 (11th Cir. 1997); *United States v. Roldan-Zapata*, 916 F.2d 795, 803 (2d Cir. 1990), *cert. denied*, 499 U.S. 940 (1991).

[4] The government also presented evidence of Mr. Lazcano-Villalobos' prior arrest in which he hid marijuana in a secret compartment in the rear bumper of his own car, to show his knowledge of the hidden cocaine in the present case.

infer that the *driver* of a vehicle has knowledge of the contraband within it"[5] (emphasis added) or adopt the Fifth Circuit's standard that, in hidden compartment cases, knowledgeable possession requires "circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge."[6] *Anchondo-Sandoval,* 910 F.2d at 1236. Instead, we believe our requirement that the government present direct or circumstantial evidence to show some connection or nexus individually linking a defendant to the contraband, is sufficient to protect the interests of the defendant in a joint occupancy situation. For Mr. Lazcano-Villalobos' benefit, we note that even if we applied the Fifth Circuit's standard, we believe the circumstantial evidence is sufficiently "suspicious in nature" or demonstrates sufficient "guilty knowledge" to support the district court's denial

---

[5] *Levario* involved an unusually large amount of cocaine – weighing approximately 2,000 pounds – hidden in a U-Haul truck driven by the defendant. *See id.*, 877 F.2d at 1484-86. Thus, *Levario* is limited in its application to situations where, for example, the driver's knowledge is inferred from the unusually large amount of contraband located in the vehicle. *See id.* at 1486 (relying on *United States v. Laughman*, 618 F.2d 1067, 1076 (4th Cir. 1980) (holding inference of driver's knowledge existed when truck-camper contained over 1,100 pounds of marijuana), *cert. denied*, 447 U.S. 925 (1980)).

[6] Mr. Lazcano-Villalobos relies on *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995); *United States v. Shabazz,* 993 F.2d 431, 441-442 (5th Cir. 1993); *United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990); *United States v. Anchondo-Sandoval,* 910 F.2d 1234, 1236 (5th Cir. 1990). Our reading of these cases persuades us the standard applied by the Fifth Circuit is more applicable to single occupancy or exclusive possession cases than to joint occupancy situations.

-15-

of Mr. Lazcano-Villalobos' motion for acquittal and the jury's verdict. *Id.*

Section 404(b) Evidence

Prior to the trial, the government filed a motion under Fed. R. Evid. 404(b)[7] seeking to use evidence of Mr. Lazcano-Villalobos' prior arrest, nineteen months earlier, for possession with intent to distribute marijuana.[8] The motion stated, in relevant part:

> Defendant Lazcano Enriquez-Villalobos [sic] was arrested in Liberal, Kansas on May 21, 1996 for possession of marijuana.
>
> ...
>
> The United States intends to present this evidence as proof of Defendant Lazcano Enriquez Villalobos'[sic] ... *knowledge*, intent and absence of mistake or accident, in the above-captioned and -numbered cause.

(Emphasis added). The day before the trial, the district court held a hearing, at which time Mr. Lazcano-Villalobos' counsel moved to exclude the 404(b)

---

[7] Fed. R. Evid. 404(b) states, in relevant part:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[8] Although the government charged Mr. Lazcano-Villalobos with felony possession of marijuana, he pled guilty to misdemeanor possession.

evidence. At the hearing, the government stated it intended to introduce evidence of Mr. Lazcano-Villalobos' arrest and guilty plea to show his "knowledge" of "concealed compartments" for the purpose of transporting controlled substances. Mr. Lazcano-Villalobos' counsel argued "the probative value" of the prior arrest "is far outweighed ... by the prejudicial harm" to Mr. Lazcano-Villalobos. The district court reserved its ruling until the trial and ultimately granted the government's Rule 404(b) motion to admit the evidence. In granting the motion, the district court did not specifically articulate its reasoning, but stated simply:

> [M]y present feeling is that the motion to suppress is not good. I think the 404(b) looks like ... it is appropriate. I reserve the right to change my mind if evidence develops and it appears to me that it is not appropriate. But right now, with what has been tendered to me in *writing*, I think it is.

(Emphasis added). With respect to the purpose for which the evidence was admitted, the district court concluded the purpose was to show "knowledge." The government then introduced the testimony of a Kansas Sheriff's Deputy who testified as to Mr. Lazcano-Villalobos' arrest for possession of marijuana. On that occasion, Mr. Lazcano-Villalobos drove a vehicle registered to him in Colorado and altered with secret compartments in the rear bumper. The deputy testified the hidden compartment "was one of the better constructed cutouts" he had seen in eleven years in law enforcement.

We apply a four-part test in determining whether the district court properly admitted evidence under Rule 404(b). This test requires that:

> (1) the evidence was offered for a proper purpose; (2) the evidence was relevant; (3) the trial court determined under Fed. R. Evid. 403 that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave the jury proper limiting instructions upon request.

*United States v. Hill*, 60 F.3d 672, 676 (10th Cir.), *cert. denied*, 516 U.S. 970 (1995).

Mr. Lazcano-Villalobos claims the district court erred in applying the first three parts of this test. He claims the evidence was used for an improper purpose because it "served to merely show [he] was a bad person." He debates the relevancy of the evidence claiming his "prior narcotics involvement was neither close in time, nor highly probative, nor similar to the activity ... charged in this case," because the arrest occurred almost two years earlier and hundreds of miles from the Mexican border, involved marijuana and not cocaine, and included compartments located in the rear fender rather than the dash. Finally, he contends the district court erred in failing to carry out the required balancing test between prejudice and probative value, as required under Fed. R. Evid. 403.[9]

---

[9] Fed. R. Evid. 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations

-18-

We review the admission of evidence under Fed. R. Evid 404(b) for an abuse of discretion. *Hill*, 60 F.3d at 676. First, we note the record shows the government argued, and the district court expressly agreed, that the evidence of Mr. Lazcano-Villalobos' prior arrest was offered for the permissible purpose of showing his knowledge of the hidden compartment containing the cocaine, and not for the impermissible purpose of showing his bad character. Second, evidence of Mr. Lazcano-Villalobos' prior arrest meets the relevancy requirement because it shows conduct "close in time, highly probative and similar to the activity with which [he] is charged." *See United States v. McKinnell*, 888 F.2d 669, 676 (10th Cir. 1989). Specifically, evidence concerning his prior arrest implicates his knowledge of the hidden compartment in the instant case because it shows he previously owned a car in which he concealed contraband in a hidden compartment. The facts the contraband changed from marijuana to cocaine and the location of the hidden compartment changed from the rear bumper to under the dash, do not make the evidence less probative. Because the government offered the 404(b) evidence for the proper purpose of showing Mr. Lazcano-Villalobos' knowledge of the contraband, and the evidence is relevant to show such knowledge, we find the district court did not abuse its discretion in allowing

of undue delay, waste of time, or needless presentation of cumulative evidence.

-19-

its admission under the first two parts of the Rule 404(b) test.

As for the third part of the test, the district court did not expressly state that, under Rule 403, the probative value of the evidence substantially outweighed its potential for unfair prejudice. The government suggests the district court does not need to expressly articulate the formal balancing test under Rule 403, because an implicit balancing is sufficient. The government, however, admits this position might be in "tension" with *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1148 (1999), which states that "[t]his Circuit has required on-the-record findings for a trial court's balancing under Rule 403 when the disputed evidence is offered pursuant to one of the specialized character evidence rules," including Rule 404(b) evidence. *Id.* at 1189 n.10.

We have consistently upheld implicit Rule 403 determinations when the determinations are supported by the record. *See, e.g., United States v. Wilson*, 107 F.3d 774, 783 (10th Cir. 1997) (concluding the district court implicitly made a Rule 403 finding when it ruled at trial and at a motion in limine hearing to admit 404(b) evidence); *Mills*, 29 F.3d at 549 (holding the district court implicitly made a Rule 403 determination when the defendant argued prejudice would outweigh the 404(b) evidence's utility); *accord United States v. Easter*, 981 F.2d

1549, 1553-54 (10th Cir. 1992), *cert. denied*, 508 U.S. 953 (1993); *United States v. Patterson,* 20 F.3d 809, 814 (10th Cir.), *cert. denied*, 513 U.S. 841 (1994).  Our holding in *McVeigh* merely reaffirms our authority  to conduct a *de novo* balancing where the trial court failed to make explicit findings to support a Rule 403 ruling.  153 F.3d at 1189.

Nonetheless, we are compelled to clarify the *McVeigh* footnote to which Mr. Lazcano-Villalobos refers, in which we state a requirement for on-the-record findings of a trial court's balancing test under Rule 403, when the disputed evidence is 404(b) evidence.  *Id.* at 1189 n.10.  The footnote cited by Mr. Lazcano-Villalobos relies on our holding in *United States v. Kendall*, 766 F.2d 1426 (10th Cir. 1985), *cert. denied*, 474 U.S. 1081 (1986).  In *Kendall*, we stated the government must articulate precisely the evidentiary hypothesis for the admission of 404(b) evidence; the trial court must specifically identify the "*purpose*" for such evidence.[10]  *Id.* at 1436 (emphasis added).  We noted that specific articulation of the relevant "purpose ... will enable the trial court to more

---

[10]  This comports with our decisions that even if the district court fails to identify the purpose for admission of 404(b) evidence, such error is harmless if its purpose is apparent from the record and properly admitted.  *See, e.g.*, *Easter*, 981 F.2d at 1554 n. 2 (explaining that while *Kendall* requires the court's articulation of the purpose of admitting 404(b) evidence, an omission is harmless so long as the purpose is apparent from the record); *accord United States v. Sarracino*, 131 F.3d 943, 948 (10th Cir. 1997); *Wilson*, 107 F.3d at 783.

accurately make an informed decision and weigh the probative value of such evidence against the risks of prejudice specified in Rule 403." *Id.* at 1436-37. Thus, in *Kendall*, we required express articulation of the "purpose" for the evidence, but not express articulation of the district court's Rule 403 analysis on whether the probative value of the 404(b) evidence outweighed the prejudicial effect.

In this case, the record sheds sufficient light on how the district court viewed the evidence. The district court expressly stated the "purpose" of the 404(b) evidence was to show "knowledge." Although the district court did not make explicit findings under Rule 403's balancing test, we note counsel for Mr. Lazcano-Villalobos argued during the motion hearing that "the probative value" of the prior arrest "is far outweighed ... by the prejudicial harm" to him. The district court subsequently took the matter under advisement until the trial. Although explicit findings are clearly preferable, under the facts of this case we conclude the district court must have implicitly made a Rule 403 finding when it contemplated Mr. Lazcano-Villalobos' unfair prejudice and probative value argument. *Accord Wilson*, 107 F.3d at 783; *Mills*, 29 F.3d at 549. For these reasons, we conclude the district court did not abuse its discretion in admitting the 404(b) evidence concerning Mr. Lazcano-Villalobos' prior arrest.

For the foregoing reasons, we **AFFIRM** Mr. Lazcano-Villalobos'
conviction.