F I L E D
United States Court of Appeals
Tenth Circuit

NOV 2 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TODD LADON JOHNSON,

Defendant-Appellant.

No. 98-8101
(D.C. No. 98-CR-84-2)
(D. Wyo.)

**ORDER AND JUDGMENT** *

Before **TACHA** , **KELLY** , and **BRISCOE** , Circuit Judges.


After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Todd Ladon Johnson appeals his conviction of possession with intent to distribute cocaine and aiding and abetting in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B) and 18 U.S.C. § 2. He argues that there was insufficient evidence for a jury to find that he had actual or constructive possession of the drugs at issue. We affirm.

## FACTUAL BACKGROUND

At dusk on April 1, 1998, Johnson, in the front passenger seat of a Ford Taurus with a California license plate, was traveling westbound on Interstate 80 west of Laramie, Wyoming. Officer David Chatfield of the Wyoming Highway Patrol stopped the car after noting that it had illegally-tinted windows and an unsecured front license plate. The driver, Arnold Butler, got out of the car. He talked to Chatfield about the license plate and tinted windows and provided his driver's license (which had been canceled), registration (with a Sacramento, California address), and proof of insurance. Butler also identified his only passenger as Johnson.

Chatfield issued Butler a ticket for driving without a valid operator's license and warnings for the other observed infractions. He returned Butler's documents, then asked if he could search the car for drugs. In response, Butler shrugged and opened the car trunk. After conducting a brief search of the trunk and the two duffle bags in it, Chatfield received consent to look in the back seat.

-2-

He found nothing of consequence under the seat behind the driver. He then walked around the car to look in the other side, knelt down, and put his hand under the seat, where he felt a package. Chatfield attempted to pull the package out, but because it was caught on something he could only see about one and one-half inches of it. He thought that he observed a brick-sized amount of compressed powder, wrapped in red-tinted cellophane. He believed the powder was a controlled substance. At that point, Butler jumped into the Taurus and Chatfield spun away from the car. Butler sped off, with Johnson visible through the open door.

Chatfield then ran back to his patrol car and began pursuit. He also radioed the dispatcher and other law-enforcement officers to alert them to the developing situation. A high-speed chase ensued, through a one-lane construction zone, across a median, down an exit ramp, and onto Curtis Street in Laramie, where Chatfield and the other officers who had joined the chase lost sight of the car.

Approximately two minutes later, another officer spotted the car sitting stationary in the street behind a bakery located near Curtis Street and watched as it began moving toward the store. The officer forced it to a stop and arrested Butler, who was alone in the car. Arriving at the scene, Chatfield noted that the back seat had been lifted up and that there was nothing underneath it.

Shortly afterwards, an officer noticed Johnson on foot about six blocks from the site of Butler's arrest and four to five blocks from the bakery. After calling in to obtain a description of the missing passenger, he stopped and arrested Johnson. At the time of his arrest, Johnson was cold and clammy to the touch and appeared to have been sweating. He had $746.37 in cash in a pocket and a photograph of some children in front of a San Francisco 49ers' poster in his wallet.

That night, the law enforcement officers began a search for the missing package that was suspected to contain drugs. They checked the car with a drug-sniffing dog, which alerted to the car doors, jumped into the back seat, and starting biting on the seats on the passenger side. No drugs were found, however. The next morning the officers continued their search in the area around the bakery. A delivery driver who noticed the police activity began looking around. He found a 49ers' stocking cap suspended in a grease drum sitting outside the bakery. Inside the cap was a white package wrapped in clear plastic. The package, which turned out to contain approximately a kilogram of cocaine, was then seized by the police.

On appeal, Johnson argues that the government introduced insufficient evidence at trial to support his conviction for possession of narcotics with the intent to distribute. He asserts that no rational trier of fact could have found that

he knowingly possessed the cocaine found in the stocking cap. We review sufficiency of the evidence claims de novo, asking "'only whether, taking the evidence--both direct and circumstantial, together with the reasonable inferences to be drawn therefrom--in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt.'" United States v. Jenkins, 175 F.3d 1208, 1215 (10th Cir.), cert. denied, 120 S. Ct. 263 (1999) (quoting United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996)).  To determine whether the evidence is sufficient, we consider the inferences that can be drawn from the evidence as a whole.  Id.  We do not "question the jury's credibility determinations or its conclusions about the weight of the evidence."  United States v. Lazcano-Villalobos, 175 F.3d 838, 843 (10th Cir. 1999).

Johnson's challenge is to the government's showing that he had constructive possession of the cocaine ultimately found in the grease barrel. A person constructively possesses contraband "'when he or she knowingly has ownership, dominion or control over the object and premises where it is found.'" United States v. Campos, 221 F.3d 1143, 1151 (10th Cir. 2000) (quoting United States v. Taylor, 113 F.3d 1136, 1144-45 (10th Cir. 1997)).  Where there is joint or shared possession of an object, the government may prove constructive possession by "present[ing] direct or circumstantial evidence to show some

connection or nexus individually linking [defendant] to the contraband."
Lazcano-Villalobos, 175 F.3d at 843. In other words, the government must offer evidence that supports "at least a plausible inference [that defendant] knew of the contraband." Id. "[A]n inference of constructive possession is reasonable if the conclusion flows from logical and probabilistic reasoning." Id.

In this case, we find that the totality of the circumstantial evidence and the reasonable inferences therefrom support a finding of Johnson's knowing possession of cocaine. First, Johnson jointly occupied the Taurus with Butler and, along with Butler, fled from Chatfield's search. Second, Chatfield's brief contact with the cellophane-wrapped package took place directly behind Johnson's seat. Third, after the high-speed chase ended and the Taurus stopped close to the bakery, the package and Johnson were missing and the back seat was lifted up. Fourth, when Johnson was arrested in the same general area, he was wearing a short-sleeved shirt on a cold night but appeared to have been sweating.

A logical inference is that, while Butler was driving the Taurus, Johnson removed the cocaine package from under the backseat. During the brief time that the officers lost sight of the Taurus, Johnson left the car, placed the package in the grease barrel, and attempted to get back to the Taurus. When he saw the officers confronting Butler, he took off on foot. The fact that Johnson was from Sacramento, California, and inferentially a 49ers' fan marginally bolsters this

inference. Thus, viewing the evidence in the light most favorable to the government, there is sufficient evidence of possession of cocaine.

Concerning evidence of intent to distribute cocaine, "[t]he quantity of the drug possessed is a circumstance which may permit the inference that the possessor intended to sell, deliver, or otherwise distribute." United States v. Gay, 774 F.2d 368, 372 (10th Cir. 1985); see also United States v. Brandon, 847 F.2d 625, 630 (10th Cir. 1988), superseded on another issue by rule, United States v. Underwood, 982 F.2d 426, 429 (10th Cir. 1992) (stating that "[i]ntent to distribute may be inferred from the large quantity of cocaine possessed"--1000 grams). The resale value of the drug and its purity is also relevant to the issue. See Gay, 774 F.2d at 372, n.4, 5.

Here, the brick of cocaine weighed 1,030.79 grams. Additionally, there was testimony that value of the brick of cocaine was in excess of $100,000 before being cut and processed. See R., vol. 6 at 277. Johnson's conviction for possession of narcotics with the intent to distribute finds support in the record.

There is also sufficient evidence for a theory of aiding and abetting. "To be guilty of aiding and abetting, a defendant must willfully associate with the criminal venture and aid such venture through affirmative action." United States v. Jones, 44 F.3d 860, 869 (10th Cir. 1995). After finding that Johnson

constructively possessed the cocaine, the jury could then infer that he willfully associated himself with the criminal venture and that he aided the venture.

The judgment of the district court is AFFIRMED.

Entered for the Court


Deanell Reece Tacha
Circuit Judge