F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

RONALD DEAN DEUCHER, JR.,

      Defendant - Appellee.

No. 00-2032
(D.C. No. CR-99-306-LH)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **PORFILIO**, and **KELLY**, Circuit Judges.

      The United States appeals from the decision of the district court for the District of

New Mexico granting a judgment of acquittal to Ronald Dean Deucher, Jr., following a

jury's verdict finding him guilty of possession with intent to distribute more than 50

kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  The

---

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

government argues it presented sufficient evidence at trial to support the verdict. Given the high standard that governs this issue, we believe the government's evidence was sufficient. The district court erred by granting the motion for acquittal, and we reverse and remand with instructions to reinstate the jury's verdict.

Mr. Deucher is a long-haul truck driver. He owned and operated his own tractor, hauling trailers for a freight company, Contract Freighters, Inc. He and his co-driver, Jose Luis Colon, had a regular route, twice weekly, from Milton, Pennsylvania, to Santa Fe Springs, California.

During the first week of December 1998, Mr. Deucher and Mr. Colon began a run from California to Pennsylvania. Instead of completing the run, Mr. Deucher left Mr. Colon in Indianapolis and flew home to El Paso, Texas, to attend his son's all-star football game. Alone, Mr. Colon completed the run to Pennsylvania and picked up a new trailer to drive to California. Mr. Colon left Pennsylvania on December 5 after inspecting the trailer and placing a numbered seal across its rear, thus insuring the storage compartment of the trailer could not be opened or entered without breaking the seal.

During a refueling stop in Amarillo, Texas, Mr. Colon noticed the seal was gone. He opened the trailer, made a visual inspection that revealed no missing, disturbed, or additional cargo, and affixed a new seal. He noted the new seal number on the cargo manifest and drove to El Paso to pick up Mr. Deucher.

Mr. Colon left the truck at a warehouse near Mr. Deucher's home at 7:30 p.m., December 6, 1998. Because the trailer had no lock, and the warehouse area was less than secure, Mr. Colon left the truck backed up against a wall to block access to the trailer. Mr. Colon then telephoned Mr. Deucher, informing him of his arrival, and the replacement of the seal in Amarillo.

Mr. Deucher retrieved the truck from the warehouse a few hours later. He picked up Mr. Colon at his home at 10:30 p.m. to proceed to California. At approximately 12:45 a.m., the truck approached the border patrol checkpoint outside of Las Cruces, New Mexico.

Upon entering the border checkpoint, Mr. Deucher did not stop immediately as required. The Border Patrol Agent, Eugene Montoya, testified he believed Mr. Deucher was trying to avoid speaking with the border patrol. After being signaled by Agent Montoya, Mr. Deucher stopped some feet beyond the designated area. Agent Montoya approached Mr. Deucher, whose demeanor, according to the agent, changed from happy to frightened and nervous. In response to Agent Montoya's questions, Mr. Deucher stated he was carrying UPS cargo to Milton Park, California. Agent Montoya became suspicious because Mr. Deucher's truck had no UPS markings which, from his personal experience, Agent Montoya knew is atypical for trucks carrying UPS cargo. He inspected Mr. Deucher's manifest and noticed it did not refer to UPS cargo and the seal number on the back of the truck had been altered.

Agent Montoya then directed Mr. Deucher to a secondary inspection point, asked him and Mr. Colon to step out of the truck, and gained consent for a drug-sniffing dog to examine the vehicle. Inspection revealed the rear doors were not properly closed, the numbered seal was not correctly attached, and the seal itself was not properly closed. Agent Montoya testified at the approach of the drug-sniffing dog, Mr. Deucher became visibly agitated, pacing very quickly back and forth. The dog alerted to the rear of the vehicle, and Agent Montoya opened it to find a purple plastic tub sitting beside the regular cargo. Plastic bags within the tub were found to contain approximately 161 pounds of marijuana, with an approximate value of $96,000.

Both Mr. Deucher and Mr. Colon were placed under arrest. In subsequent interviews each denied any knowledge of the marijuana. According to the agent who interviewed Mr. Deucher, he stated he inspected the truck when he retrieved it from the warehouse and the seal was proper and contents secure.

Mr. Deucher was tried for possession with intent to distribute marijuana,[1] and the jury returned a verdict of guilty after a two-day trial. At the close of the prosecution's case and at the close of his own, Mr. Deucher moved for a judgment of acquittal. Both motions were denied. Upon a post-verdict renewal of the motion, however, the district

---

[1]Mr. Deucher and Mr. Colon were both indicted for conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana. In July 1999, a jury acquitted Mr. Colon of both charges, but was unable to reach a verdict as to Mr. Deucher. Based on the acquittal of Mr. Colon, Mr. Deucher's motion for acquittal on the conspiracy charge was granted.

court changed its ruling and directed a verdict of acquittal for insufficiency of the evidence. The government then filed this appeal.

This Court reviews a district court's grant of a motion for judgment of acquittal *de novo* using the same standard applied by the district court. ***United States v. Lazcano-Villalobos,*** 175 F.3d 838, 843 (10th Cir. 1999). The standard applied by the district court requires viewing all the evidence in the light most favorable to the government and determining whether the evidence establishes the elements of the crime. ***United States v. Rangel-Arreola,*** 991 F.2d 1519, 1521 (10th Cir. 1993). Respect for the jury's role as fact-finder and judge of credibility means this Court cannot "overturn a jury's finding unless no reasonable juror could have reached the disputed verdict." ***United States v. Carter,*** 130 F.3d 1432, 1439 (10th Cir. 1997). The Court must give the benefit of the doubt to the government, "and assume the jury found its evidence, both direct and circumstantial, to be credible." ***United States v. Chavez-Palacios,*** 30 F.3d 1290, 1294 (10th Cir. 1994). Nevertheless, "the evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt," and the Court "may not uphold a conviction by piling inference upon inference." ***United States v. Valadez-Gallegos,*** 162 F.3d 1256, 1262 (10th Cir. 1998).

In this case, to support a conviction for possession with intent to distribute marijuana, the government was required to prove: (1) Mr. Deucher knowingly possessed the illegal drug; and (2) he possessed it with the specific intent to distribute it. The

parties stipulated to all elements of the crime except for knowledge. Because Mr. Deucher did not have exclusive possession of the truck containing the marijuana, the government must show "some connection or nexus individually linking" Mr. Deucher to the contraband. *Lazcano-Villalobos*, 175 F.3d at 843.

The government argues the evidence presented at trial is sufficient to justify the verdict, and we agree. Mr. Deucher owned the truck containing the marijuana. Mr. Colon testified no such marijuana was present when he re-sealed the trailer in Amarillo. The trailer was parked against the wall of the warehouse so that no one could access it without moving it first. Mr. Deucher told the interviewing DEA agent he had checked the trailer immediately before leaving El Paso for the Las Cruces checkpoint and everything was fine, but the seal was broken when Agent Montoya stopped him, and the rear doors were not properly secured. He failed to stop at the checkpoint, attempting to roll through it. Mr. Deucher made false statements to Agent Montoya about his cargo and destination, indicating he had something to hide. His demeanor at the checkpoint was scared and nervous, particularly when the drug-sniffing dog approached the truck. Finally, the value of the marijuana was such that it would be unreasonable for an unaware agent to be carrying it.

None of these facts alone make for an inference of knowledge on Mr. Deucher's part. Indeed, Mr. Deucher contested some and explained others. Nevertheless, false and misleading statements can provide a basis for inferring guilty knowledge. *United States*

*v. Johnson*, 57 F.3d 968, 972 (10th Cir. 1995). While we must use caution in considering nervousness as evidence of guilty knowledge, because most citizens will be somewhat nervous in an encounter with law enforcement authorities asking potentially incriminating questions, *United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir. 1994), the testimony of Agent Montoya suggests Mr. Deucher's agitation exceeded the norm. We have used evidence of nervousness to support an inference of guilty knowledge in similar circumstances. *Lazcano-Villalobos*, 175 F.3d at 844. The value of the marijuana can be used to infer knowledge because it is unlikely that such a valuable substance would have been left with a dupe. *Johnson*, 57 F.3d at 972. Judgments of credibility and weighing of evidence are the jury's function. Taken in its entirety, the evidence with the inferences drawn from it, provides a reasonable juror the basis to conclude the government had met its burden.

Together the direct testimony and the inferences could have led a jury to reasonably conclude the trailer was not tampered with prior to arriving in El Paso. Because the trailer was parked against the warehouse, it would need to be moved, and unsealed, to place anything inside. Mr. Deucher had the opportunity and means to do so. This would also explain why the seal placed on the truck by Mr. Colon in Amarillo was unsealed when the truck was stopped in Las Cruces. Certainly other accounts raised by the defense are facially consistent with the evidence, but a juror could reasonably conclude Mr. Deucher must have known of the marijuana in the trailer. The judgment of

the district court is REVERSED and REMANDED WITH INSTRUCTION to reinstate the verdict.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge