**PUBLISH**

# UNITED STATES COURT OF APPEALS

**Filed 9/6/96**

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

  v.

ABELINO GUERRERO-
HERNANDEZ,

      Defendant - Appellant.

No. 95-2161

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO
### (D. Ct. No. CR 94-571-JC)

---

Kurt J. Mayer, Assistant Federal Public Defender, Las Cruces, New Mexico, appearing for the Appellant.

Lauren A. Mickey, Assistant United States Attorney (John J. Kelly, United States Attorney, and Kelly H. Burnham, Assistant United States Attorney, with her on the brief), Las Cruces, New Mexico, appearing for the Appellee.

---

Before TACHA, REAVLEY,[*] and LUCERO, Circuit Judges.

---

TACHA, Circuit Judge.

---

[*]The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

Abelino Guerrero-Hernandez pled guilty to illegal reentry after deportation, a violation of 8 U.S.C. § 1326(a), and reserved his right to appeal the denial of his suppression motions. The district court sentenced him to twenty-four months in prison. On appeal, Guerrero argues that the district judge erred by denying his motions to suppress and by increasing his criminal history and offense levels under the sentencing guidelines. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a)(2) and 28 U.S.C. § 1291, and affirm.

In July 1994, as part of an investigation designed to find illegal aliens, the Immigration and Naturalization Service (INS) requested a list of persons on probation or parole from the New Mexico Probation and Parole Office. Guerrero's name was on this list. Background checks on the people on the list revealed that Guerrero was an alien. The agents then ordered his alien file, which showed that he had been previously deported and excluded from the United States and that he had been previously convicted of a felony. The file also contained photographs of Guerrero.

INS agents obtained Guerrero's current address from the Metro Narcotics Agency in Las Cruces. At Guerrero's home, the agents met his wife, who told them that Guerrero was out doing community service for the housing authority as

part of a sentence for a drunk driving conviction. The agents then went to the housing authority and found Guerrero. One of the agents asked Guerrero his name, and he confirmed that he was Abelino Guerrero. The agent then identified himself and the others as INS agents and asked Guerrero whether he was in the United States legally. Guerrero responded that he was not. Guerrero was not under arrest when the agent asked these questions, and all of the INS agents were dressed in plain clothes.

After Guerrero stated that he was in the United States illegally, he was orally advised of his Miranda rights and taken to the Border Patrol station. On the way to the station, one of the agents asked Guerrero if he had been previously deported. He answered that he had been, and that he had illegally re-entered the United States. This statement was consistent with the information in his alien file. Upon arriving at the Border Patrol station, Guerrero was re-advised of his Miranda rights using a written form, which he signed, indicating that he understood his rights and was willing to waive them and speak with the agents without an attorney present. One of the agents then questioned Guerrero in order to complete Form I-213, the Record of Deportable Alien form. The information Guerrero provided in response to the agent's questions included the date and place of his prior illegal entry, the date and place of his prior deportation, his

criminal history, and his previous addresses. The agents already knew some of this information through Guerrero's alien file. After the agent completed Form I-213, he asked Guerrero to give a sworn statement and read him his <u>Miranda</u> rights a third time. At this point Guerrero asked for an attorney, and questioning stopped.

Prior to pleading guilty, Guerrero moved to suppress his statements on the grounds that they were elicited before he received his <u>Miranda</u> warnings. Guerrero also moved to suppress all the evidence both because the agents lacked probable cause to arrest him and because the agents obtained the list of probationers and parolees in violation of New Mexico law. The district court denied these motions, and Guerrero entered into a conditional plea agreement, reserving his right to appeal the denial of the suppression motions. At sentencing, Guerrero objected to the presentence report, arguing that his prior felony drug convictions were related cases and thus should not be used to increase his criminal history level, and that his prior conviction for possession of marijuana for sale should be treated as simple possession of marijuana. The district court rejected these objections and sentenced him within the applicable guideline range.

In the context of motions to suppress, we review conclusions of law de novo and factual findings for clear error. <u>United States v. Richardson</u>, 86 F.3d

1537, 1543 (10th Cir. 1996).  Guerrero argues that the agents questioned him in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), by asking him his name and immigration status without first informing him of his right to remain silent and his right to an attorney.  Law enforcement officers must give <u>Miranda</u> warnings to suspects subject to custodial interrogation.  <u>Id.</u> at 444.  However, a person is not in custody simply because law enforcement officers question him, and a consensual encounter does not become custodial simply because the person being questioned is the target of an investigation.  <u>United States v. Ellison</u>, 791 F.2d 821, 823 (10th Cir. 1986).  In this case, plainclothes INS agents approached Guerrero outdoors, in a public place, without displaying firearms.  Guerrero had no reason to believe that he could not leave or could not refuse to answer when the agent inquired as to his identity.  Thus, because Guerrero was not in custody when the agents asked his name and immigration status, <u>Miranda</u> warnings were not required.

Guerrero also contends that the INS agents lacked probable cause to arrest him and thus the statements that he made after his arrest should have been suppressed.  Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the

person arrested. <u>United States v. Morgan</u>, 936 F.2d 1561, 1568 (10th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1102 (1992). In this case, the INS agents had probable cause to arrest Guerrero for reentry after deportation based on the information in his alien file and his statement that he was in the United States illegally.

Moreover, the INS agents did not obtain Guerrero's alien file in violation of New Mexico law. New Mexico Statute § 31-21-6 privileges all "social records"-- including presentence reports, pre-parole reports, and supervision histories--obtained by the Probation and Parole Board, and limits disclosure of these records to the board, the director, the sentencing guidelines commission or sentencing judge, and prison authorities. This statute does not apply here, however, because Guerrero's name and parole status, which the INS agents received from the Probation and Parole Board, is not a social record like a presentence report, a pre-parole report, or a supervision history. Instead, this information is more like an investigative report, to which this non-disclosure statute has been held inapplicable. <u>See</u> <u>New Mexico v. Rickard</u>, 881 P.2d 57, 59 (N.M. Ct. App.) (holding that social records are "the types of personal observations, sensitive data, and recommendations that probation and parole officers use to inform the probation and parole board or sentencing judge regarding whether to grant parole or probation"), <u>aff'd in part on other grounds</u>

and rev'd in part on other grounds, 884 P.2d 477 (N.M. 1994). While the statute protects some information from disclosure, Guerrero's status as a parolee or probationer is not the type of sensitive information that this statute was intended to protect.

In addition, the district court's application of the Sentencing Guidelines was not in error. We review the district court's factual determinations at sentencing for clear error, and its legal conclusions de novo. Richardson, 86 F.3d at 1553. The Sentencing Guidelines provide that three points should be added to the criminal history score for each prior sentence of imprisonment exceeding one year and one month. U.S.S.G. § 4A1.1(a). Prior sentences imposed in unrelated cases are to be counted separately. U.S.S.G. § 4A1.2(a)(2). Prior sentences are related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing. U.S.S.G. § 4A1.2, application n.3. Guerrero contends that two of his three prior convictions were consolidated for the guilty plea hearing, and that all three were consolidated for sentencing. Thus Guerrero argues that the convictions were related and should have been counted only once when calculating his criminal history score. The record indicates that the three convictions were informally consolidated for convenience and judicial economy.

Although a formal judicial order is not necessary to permit a finding that prior cases were consolidated for sentencing, United States v. Alberty, 40 F.3d 1132, 1134 (10th Cir. 1994), cert. denied, 115 S. Ct. 1416 (1995), in the absence of a formal order "[o]ur precedents uniformly require . . . the defendant to show a factual nexus between the prior offenses to demonstrate they are 'related,'" id. at 1135. Guerrero points to no evidence, and we find none in the record, that the cases were factually related. Thus, the district court did not err when it concluded that Guerrero's prior convictions were not related; the addition of nine criminal history points was appropriate.

Finally, the court did not err by sentencing Guerrero under U.S.S.G. § 2L1.2(b)(2), which provides a 16-level increase for defendants who were previously deported after a conviction for an aggravated felony. Aggravated felonies include any illicit trafficking in any controlled substance as defined in 21 U.S.C. § 802, and the offenses can be based on federal or state law. U.S.S.G. § 2L1.2, application n.7. In this case, the court correctly concluded that Guerrero's state conviction of possession of marijuana/hashish for sale qualified as an aggravated felony. Thus, the 16-level sentence enhancement was appropriate.

The decision of the district court is AFFIRMED.