**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee/
Cross - Appellant,

      v.

FRANCIS EDWARD SPRINGFIELD,

      Defendant - Appellant/
Cross - Appellee.

Nos. 98-8093 & 98-8103

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D. Ct. No. 98-CR-051-01-B)**

---

James H. Barrett, Assistant Federal Public Defender, Cheyenne, Wyoming, appearing for Appellant/Cross-Appellee.

Sean Connelly, Attorney, United States Department of Justice, Denver, Colorado (David D. Freudenthal, United States Attorney, and John R. Green, Assistant United States Attorney, District of Wyoming, Cheyenne, Wyoming, with him on the brief), appearing for Appellee/Cross-Appellant.

---

Before **TACHA** , **McKAY** , and **HENRY** , Circuit Judges.

---

**TACHA** , Circuit Judge.

---

Defendant Springfield appeals his conviction for (1) possession with intent

to distribute methamphetamine and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, (2) carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A), (3) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and (4) being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). He argues that the district court erred in denying his motion to suppress. He further claims that sufficient evidence did not exist for a jury to convict him of any of the charges. The government cross-appeals the district court's decision not to sentence the defendant under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and armed career criminal sentencing guideline, U.S. Sentencing Guidelines Manual § 4B1.4.

We have jurisdiction over defendant's appeal pursuant to 28 U.S.C. § 1291 and over the government's cross-appeal pursuant to 18 U.S.C. § 3742(b). We AFFIRM in part and REVERSE in part.

## I. Defendant's Appeal

### A. Background

Around midnight on February 15, 1998, police officer Rod Gates encountered a brown van with Montana plates traveling about thirty miles per hour. Two passengers in the rear of the van, defendant and Shannon Old Elk, repeatedly looked back at Gates as he followed the van. Gates requested a

registration check on the Montana plates and learned that they were registered to a different vehicle. While he was waiting for the registration check to be completed, Gates observed that the defendant and Old Elk were reaching over and under the seat and continued to look back at him. Once Gates learned that the van did not have valid plates, he activated his emergency lights. The van continued at the same speed for approximately two blocks while defendant and Old Elk reached under and around the seat in a more exaggerated manner than they had before.

After the van pulled over, Gates approached the van and explained to the driver, Edward Notafraid, why he had stopped the vehicle. Cheney Springfield and Mark Nomee were seated beside Notafraid in the front of the van. Old Elk sat behind the passenger side of the van, while defendant sat behind the driver's side of the van. A subsequent search of the van, pursuant to Notafraid's voluntary consent, revealed drugs, drug paraphernalia and a gun. Specifically, Gates found a segment of PVC pipe and 19.68 grams of methamphetamine in a shopping bag on the rear passenger side floor to the right of where Old Elk had been sitting. Another officer found a Colt 9 millimeter semi-automatic pistol in a woman's drawstring purse on the rear floor directly in front of where defendant had been seated.

After Gates discovered the methamphetamine, he asked the occupants of

the van who the drugs belonged to. Notafraid, Cheney Springfield, Nomee and Old Elk all stared at defendant, while defendant looked down. Shortly thereafter, one of the officers recognized defendant as a convicted violent offender. The officers eventually arrested all of the van's occupants and transported them to the county jail. When Gates mirandized and questioned Old Elk at the scene, she claimed that the drugs and the gun belonged to her. At the jail, she again claimed that the drugs belonged to her.

One of the officers searched defendant at the jail and discovered trace amounts of methamphetamine and five rounds of 9 millimeter ammunition. The same type of ammunition was loaded in the gun found in the purse, and one of the cartridges found in defendant's pocket appeared, from ballistics review, to have been cycled previously through the gun.

## B. Probable Cause to Arrest

Defendant asserts that the district court erred in denying his motion to suppress the evidence discovered after he was arrested. He claims the police did not have probable cause to arrest him and, therefore, the ammunition and drugs found on his person following his arrest should have been suppressed. In reviewing the denial of a motion to suppress, we must accept the district court's factual findings unless they are clearly erroneous and we view the evidence in the light most favorable to the prevailing party. United States v. Vazquez-Pulido ,

155 F.3d 1213, 1216 (10th Cir.), cert. denied, 119 S. Ct. 437 (1998). However, we review de novo the legal issue of whether the police had probable cause to arrest defendant. United States v. Dozal, 173 F.3d 787, 792 (10th Cir. 1999).

"'Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested.'" Vazquez-Pulido, 155 F.3d at 1216 (quoting United States v. Guerrero-Hernandez, 95 F.3d 983, 986 (10th Cir. 1996)). We determine whether probable cause to arrest exists based on the totality of the circumstances. Id. While probable cause to arrest "does not require facts sufficient to establish guilt, [it] does require more than mere suspicion." Id.

Defendant maintains that at the time of his arrest, the police had no evidence that he was connected in any way to the drugs or the gun. He argues, therefore, that the police arrested him solely because of his proximity to criminal activity. We agree with defendant that "nearness to the place of the arrest of a co-conspirator or to the place of illegal activity" is not sufficient to establish probable cause. Id. However, defendant was not arrested merely because he was present at the scene of a crime.

According to the district court, the police knew the following facts at the time of defendant's arrest: (1) defendant engaged in furtive actions in the rear of

the van as Officer Gates followed the vehicle, (2) defendant was a passenger in a vehicle with invalid tags, (3) the police found drugs and a gun in defendant's vicinity within the van, (4) the other occupants of the van looked to defendant for guidance and followed his lead, and (5) defendant was a violent felon. The district court concluded that it was logical for the police to infer that defendant's furtive actions were attempts to conceal the contraband located near him in the van. The district court also found that it was reasonable for the police to assume defendant was tied to the contraband because the van's other occupants deferred to him and he was a known violent criminal.

From the totality of the circumstances, we hold that the arresting officers could reasonably infer a connection between defendant and the drugs and gun found in the van. Thus, viewing the evidence in the light most favorable to the government, we agree with the district court that the police had probable cause to arrest defendant. Consequently, we affirm the district court's denial of defendant's motion to suppress.

### C. Sufficiency of the Evidence

Defendant argues that the government introduced insufficient evidence at trial to support his convictions for possession of narcotics with the intent to distribute, carrying a firearm during a drug offense, and being a felon in possession of a firearm. He asserts that no rational trier of fact could have found

that he knowingly possessed the drugs and gun found in the van. Furthermore, defendant claims that the government lacked sufficient evidence to convict him of being a felon in possession of ammunition. He contends that the ammunition found on his person was the fruit of an unlawful arrest and, therefore, was inadmissible at trial.

We review sufficiency of the evidence claims de novo, asking "'only whether, taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt.'" United States v. Jenkins, 175 F.3d 1208, 1215 (10th Cir.), cert. denied, __ S. Ct. __, 1999 WL 623883 (1999) (quoting United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996)). To determine whether the evidence is sufficient, we consider the inferences that can be drawn from the evidence as a whole. Id. We do not "question the jury's credibility determinations or its conclusions about the weight of the evidence." United States v. Lazcano-Villalobos, 175 F.3d 838, 843 (10th Cir. 1999).

**1. Possession of the Drugs and Gun**

The government argues that it presented sufficient evidence from which a jury could conclude that defendant constructively possessed the drugs and gun. "A person constructively possesses contraband when he or she knowingly holds

ownership, dominion or control over the object and premises where it is found." Lazcano-Villalobos, 175 F.3d at 843. A defendant's exclusive possession of the object or premises "may support an inference of constructive possession," but joint occupancy of the object or premises "cannot sustain such an inference." Id. "To prove constructive possession where there is joint occupancy, the government must present direct or circumstantial evidence to show some connection or nexus individually linking [defendant] to the contraband." Id. In other words, the government must offer evidence that supports "at least a plausible inference [that defendant] knew of the contraband." Id.

Here, defendant jointly occupied the van with four other occupants. Nevertheless, ample evidence exists from which a jury could have found defendant knew of the drugs and gun in the vehicle. First, defendant engaged in furtive actions in the rear of the van as Officer Gates followed the vehicle. Second, both the drugs and the gun were found in the rear of the van close to where defendant had been seated. Third, the police found trace amounts of methamphetamine in defendant's jacket. Fourth, the gun was a 9 millimeter colt pistol and the police found five rounds of 9 millimeter ammunition on the defendant. Finally, one of the bullets defendant was carrying appeared to have been cycled previously through the gun.

Thus, viewing the evidence in the light most favorable to the government,

sufficient evidence exists to support the jury's convictions of defendant for possession of narcotics with the intent to distribute, carrying a firearm during a drug offense, and being a felon in possession of a firearm. The government presented evidence supporting at least a plausible inference that defendant constructively possessed the drugs and gun in the van.

### 2. Possession of Ammunition

Defendant's argument that the ammunition found on his person was inadmissible at trial as the fruit of an unlawful arrest is meritless. As we held above, the police had probable cause to arrest defendant. Consequently, the police discovered the ammunition pursuant to a legal search and the government properly introduced it at trial. Thus, sufficient evidence exists to support the jury's conviction of defendant for being a felon in possession of ammunition

### II. Government's Cross-Appeal

The government argues that the district court committed legal error when it refused to sentence defendant as an armed career criminal under 18 U.S.C. § 924(e), the Armed Career Criminal Act (ACCA). Section 924(e)(1) provides that a defendant who has three or more prior violent felony convictions and subsequently is convicted under § 922(g) shall be imprisoned for at least 15 years and may not receive a suspended sentence or probation.

The government contends that defendant qualifies as an armed career

criminal because he previously has been convicted of at least three violent felonies: (1) escape from a prison honor camp, (2) involuntary manslaughter and use of a firearm during and in relation to a crime of violence, and (3) assault and battery while armed with a dangerous weapon. Defendant maintains that he does not have three prior violent felony convictions because his prison escape was nonviolent and a jury convicted him pursuant to a Wyoming statute that dealt with nonviolent escape from custody. Agreeing with defendant, the district court ruled that defendant's "walkaway" from a prison honor camp did not constitute a violent felony. Thus, the district court found that defendant did not qualify as an armed career criminal. We disagree.

The ACCA defines "violent felony," in pertinent part, as any felony offense which "involves conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B)(ii). We have held categorically that "an escape always constitutes 'conduct that presents a serious potential risk of physical injury to another,' for the purposes of the [ACCA] as well as for the career offender provisions of the sentencing guidelines." United States v. Moudy, 132 F.3d 618, 620 (10th Cir.), cert. denied, 118 S. Ct. 1334 (1998); see United States v. Mitchell, 113 F.3d 1528, 1533 (10th Cir. 1997), cert. denied, 118 S. Ct. 726 (1998); United States v. Gosling, 39 F.3d 1140, 1142-43 (10th Cir. 1994). Thus, under the ACCA and the United States Sentencing Guidelines, escape is always a

violent crime.  It is irrelevant whether the escape actually involved any violence or whether defendant was convicted under a state statute that defines escape as a nonviolent offense.  Accordingly, we remand this case.  On remand, the district court shall apply the armed career criminal guidelines pursuant to 18 U.S.C. § 924(e) when calculating defendant's sentence.

AFFIRMED IN PART and REVERSED IN PART.

Nos. 98-8093 & 98-8103,    United States v. Springfield

**McKAY** , Circuit Judge, concurring:


While I join in the result, I reserve judgment as to whether we should treat as violent for purposes of 18 U.S.C. § 924(e)(2)(B), a felony which the state creating the felony has defined as non-violent.  The record in this case does not support a finding that Defendant was convicted under the non-violent escape section of Wyoming state law.  Absent such a showing, I agree that we should reverse the district court's ruling that § 924(e) did not apply because the record does show that Defendant was convicted of unauthorized departure from actual custody.  I do not join, however, in our broad dictum stating as "irrelevant" whether "defendant was convicted under a state statute that defines escape as a nonviolent offense," Maj. Op. at 11, when there is no showing of actual violence.  Elsewhere I have reviewed state law that often defines failure to return from work release or other inmate release program as felony escape.  In that brief concurring opinion, I noted that "there is a quantum difference between the assumptions about the intrinsic danger of unauthorized departure from actual custody . . .          and of failure to return from authorized departure from actual custody."          United States v. Adkins , No. 98-3322 (10th Cir. Nov. 12, 1999) (McKay, J., concurring).  I do not believe that under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and the United States Sentencing Guidelines, escape is necessarily always a violent

crime. I believe we should use more care before sweeping into law a statutory

interpretation which the text does not support.