**UNITED STATES of America,
Plaintiff,**

v.

**Roger Kent RENO, Defendant.**

**Case No. 01–40121–01–SAC.**

United States District Court,
D. Kansas.

March 18, 2002.

James A. Brown, Office of United States Attorney, Topeka, KS, for U.S.

Richard E. Jones, Melody J. Evans, Office of Federal Public Defender, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on three motions filed by the defendant: Motion to suppress search of defendant's truck (Dk. 24); motion to sever counts (Dk. 27); and motion to suppress search at 911 South Garfield (Dk. 29).

### I. Motion to Sever Counts

Defendant is charged by indictment with five counts of possession, conspiracy, or manufacture of illegal substances. In this motion, defendant seeks to receive four trials; one for count one, another for count two, a third for count three, and a fourth for counts four and five together. In the alternative, defendant asks to sever count four from all others, resulting in two trials.

Defendant does not allege that the counts were improperly joined, but claims that the prejudicial effect of trying unrelated counts together will have a "spillover" effect upon the considerations of the jury, who will impermissibly consider defendant's actions on one date to infer defendant's guilt on another date and offense. Defendant additionally contends that because the evidence in support of count four is based "wholly on the testimony of culpable participants, it is so weak that the risk of prejudice is 'intolerable.'" Defendant cites no cases in support of this proposition, and the court has found none.

Rule 8(a) of the Federal Rules of Criminal Procedure provides that "two or more offenses may be charged in the same indictment ... in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." However, the court may sever properly joined counts, "if it appears that a defendant ... is prejudiced by a joinder of offenses ..." Fed.R.Crim.P. 14.

■ The court finds that defendant's complaints of prejudice are speculative and unwarranted. The events on which the counts are based occurred on different dates, in several different locations, and involved various law enforcement officers. The risk of jury confusion is minimal. Any concern about the prejudicial spillover effect may be cured by an appropriate limiting or other instruction at trial. This motion shall be denied.

### II. Motion to Suppress Truck Search

Defendant seeks to suppress any evidence seized from the search of his truck on April 1, 2000. Defendant alleges that his arrest on April 1, 2000, was without probable cause, that the ensuing search of

his truck was thus not incident to a lawful arrest, and that no independent probable cause justified the search of his truck.

**Facts**

The facts, as established at the evidentiary hearing on February 14, 2002, are few and uncontested. On April 1, 2000, Officer Ralph Edward Barclay of the City of Chanute police department was on routine patrol when he saw defendant drive by at about 9:45 p.m., and followed him. Officer Barclay observed the defendant turn toward Chanute Community College, which the officer knew was not in the direction of defendant's residence. Officer Barclay then saw the defendant stop next to a large trash bin by the road, which was provided for refuse from students.

Officer Barclay then saw the defendant throw some kind of a *"bag type object"* into the dumpster. The area was lit by a street light, and the officer was approximately ten yards away at the time. Officer Barclay found defendant's act of disposing his trash in someone else's trash bin to be "unusual." Officer Barclay then pulled around the defendant's truck, looked into it, saw only the defendant in the truck, and pulled away. Defendant then left the area.

Officer Barclay immediately returned to the dumpster and looked into it. Therein he saw only a folded box with packaging paper, on the bottom of the dumpster, and one bag. Officer Barclay concluded that defendant had thrown the bag into the dumpster because it was raining at the time and the box was soaked, but the bag was dry, indicating that the bag had not been in the dumpster very long.

Officer Barclay then retrieved the bag, and found that it contained seven used syringes, 91 empty pseudoephedrine "blister packs," and three empty pseudoephedrine pill bottles. Officer Barclay immediately recognized the pseudoephedrine-related items as those commonly used in the manufacture of methamphetamine, and the syringes as drug paraphernalia.

Officer Barclay then went to defendant's residence, intending to arrest him for conspiracy to manufacture methamphetamine, due to the large number of blister packs found in the bag. Defendant returned to his residence thereafter, backed his truck into the driveway, and exited his truck. While defendant was standing next to his truck, Officer Barclay approached him, advised him that he was under arrest, handcuffed him with his hands behind his back, and searched him. Officer Barclay found in defendant's wallet three small baggies of a type commonly used in the sale or storage of drugs. Defendant was then transported to the police department. Officer Barclay then conducted a quick search of the cab of defendant's truck and found in the sun visor a syringe exactly like the one he had found in the discarded bag.

The court first addresses defendant's contention that his arrest was without probable cause.

**General Law**

 A warrantless arrest must be supported by probable cause. *See United States v. Vazquez–Pulido,* 155 F.3d 1213, 1216 (10th Cir.), *cert. denied,* 525 U.S. 978, 119 S.Ct. 437, 142 L.Ed.2d 356 (1998). An officer has probable cause to arrest if, under the totality of circumstances, he "learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *Vazquez–Pulido,* 155 F.3d at 1216 (quoting *United States v. Guerrero–Hernandez,* 95 F.3d 983, 986 (10th Cir.1996)). Although probable cause need not be based on facts sufficient for a finding of guilt, it requires

"more than mere suspicion." *Id.* (citing *United States v. Hansen,* 652 F.2d 1374, 1388 (10th Cir.1981)). *United States v. Dozal,* 173 F.3d 787, 792 (10th Cir.1999).

■ Here, the officer saw the defendant throw trash into a public bin, and the officer retrieved the item immediately thereafter. He reasonably determined that this item was the one thrown by the defendant because it was dry, while the few other items in the dumpster appeared wet from the rain, and were larger than the object defendant had thrown from his truck. These facts are sufficient to support the officer's belief, and to warrant a reasonable belief, that the bag he retrieved and its contents had just been thrown into the bin by the defendant.

■ Additionally, the contents of the bag, coupled with the fact that they were thrown into a public dumpster, were sufficient to lead a reasonable person to believe that an offense had been or was being committed by the defendant. Syringes, numerous empty blister packs of pseudoephedrine and empty pseudoephedrine pill bottles together are indicative of illegal drug activity, and defendant does not suggest any innocent explanation for having had them. The fact that a person threw these small items into a large public dumpster instead of into their own trash is an additional indication that such items may be viewed as incriminatory. The court finds sufficient probable cause to support defendant's arrest.

**Incident to Lawful Arrest**

The court next addresses defendant's contention that the search of his truck was illegal because it was not incident to a lawful arrest, and was not supported by independent probable cause.

It is well established that warrantless searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement. *See United States v. Karo,* 468 U.S. 705, 717, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). "[T]he government has the burden of proving that an exception to the warrant requirement applies." *United States v. Maestas,* 2 F.3d 1485, 1491 (10th Cir.1993).

The Tenth Circuit recently summarized the search incident to arrest exception as follows:

"[A] lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area." *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). "[T]he scope of a search [incident to arrest] must be strictly tied to and justified by the circumstances which rendered its initiation permissible." *Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (citations and quotations omitted). Because searches incident to arrest are meant to discover hidden weapons and to prevent the suspect from destroying evidence, *see id* at 763, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, a search incident to arrest may extend only to the area within the suspect's "immediate control," as that is the only area from which the suspect could draw a weapon or damage evidence. *See id.; United States v. Franco,* 981 F.2d 470, 472 (10th Cir.1992) ("The scope of the warrantless search under this exception is restricted to the person of the arrestee and to any area into which the arrestee could reach.") Thus, if the police arrest the occupant of a car they may also search the passenger compartment of the vehicle, but they may not search other areas that are outside the suspect's immediate control or "grab" space. *See Belton,* 453 U.S. at 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 *Chi-*

*mel,* 395 U.S. at 763, 89 S.Ct. 2034, 23 L.Ed.2d 685; *Franco,* 981 F.2d at 472. The justification for allowing searches incident to arrest also places a temporal restriction upon the police's conduct. As this court stated in *United States v. Lugo,* 978 F.2d 631, 635 (10th Cir.1992), once the immediate rationale for conducting a search incident to arrest has passed, the police may not then engage in a search absent probable cause to do so. *See id.* ("[W]hen the search of Lugo's truck began, Lugo was no longer at the scene. He was handcuffed and sitting in the back seat of a patrol car proceeding toward Green River. Once Lugo had been taken from the scene, there was obviously no threat that he might reach in his vehicle and grab a weapon or destroy evidence. Thus, the rationale for a search incident to arrest had evaporated.").

*United States v. Edwards,* 242 F.3d 928, 937 (10th Cir.2001).

■ Here, as in *Lugo,* the defendant had been removed from the scene and was being transported elsewhere at the time his vehicle was searched. The court finds no justification for application of the search incident to arrest exception under these facts.

**Probable Cause to Search the Car**

■ The government also contends that the search of defendant's truck was supported by probable cause. Under the Fourth Amendment, the police may conduct a warrantless search where they have probable cause to search the area in question and exigent circumstances exist to make the warrant requirement impractical. *See Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In the context of vehicle searches, a warrantless search is permissible if there is probable cause to believe that the vehicle contains contraband. *See California v. Carney,* 471

U.S. 386, 392, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *United States v. Crabb,* 952 F.2d 1245, 1246 (10th Cir.1991) (finding "neither exigent circumstances nor practical barriers to obtaining a warrant," and concluding that "time and opportunity to obtain a warrant are irrelevant, as constitutional analysis ends with finding probable cause."), *cert. denied,* 504 U.S. 925, 112 S.Ct. 1981, 118 L.Ed.2d 579 (1992). "Probable cause to search a vehicle is established if, under the 'totality of the circumstances[,]' there is a 'fair probability' that the car contains contraband or evidence." *United States v. Nielsen,* 9 F.3d 1487, 1489–90 (10th Cir.1993).

■ Defendant was arrested soon after Officer Barclay had seen him throw trash from items commonly used in the manufacture of methamphetamine out of truck. It is reasonable to infer that the same truck may have contained other items not discarded, which are commonly used in the manufacture of methamphetamine. Defendant was arrested immediately after he exited his truck and drug paraphernalia was found on his person. Officer Barclay testified that in his experience, it is common for persons arrested for drug offenses to hide or store drugs in their vehicles. From this evidence, Officer Barclay could have deduced a "fair probability" that a search of defendant's truck would reveal contraband or further evidence of criminal activity. The search of defendant's truck was thus supported by probable cause, and the motion to suppress the search of defendant's truck shall therefore be denied.

**III. Motion to Suppress Search at 911 S. Garfield**

Defendant next seeks to suppress all information obtained from the search of 911 S. Garfield in Chanute, KS. on June 30, 2000, pursuant to a warrant. Defendant alleges that the Fourth Amendment

was violated because the affidavit in support of the search warrant fails to establish any nexus between that residence and the defendant, and because certain facts in the affidavit are based upon hearsay. Defendant further alleges that the warrant itself is facially overbroad in permitting a search for items related to the sale and distribution of methamphetamine, and is not supported by "oath or affirmation."

## Facts

On June 30, 2000, at approximately 11:00 p.m., a search pursuant to warrant was made of a residence at 911 Garfield in Chanute, Kansas. Defendant was present at the time, and asserts a privacy interest in the residence. The government concedes defendant has standing to challenge the search.

## Nexus

Defendant first alleges that the affidavit in support of the search warrant for the residence fails to state or provide any reasonable inference that drug-related evidence would be found there or that the residence was his. Defendant properly states that the affidavit fails to reference 911 Garfield, does not allege that defendant's residence was anywhere or that the items sought were likely to be found at the address, does not allege that either of the confidential informants was ever at 911 Garfield or defendant's residence, and does not refer to where any of the items needed to manufacture methamphetamine were located.

## General Law

 The reviewing court gives "great deference" to the issuing judge's determination of probable cause, for it is a determination based on common sense. *United States v. Finnigin,* 113 F.3d 1182, 1185 (10th Cir.1997). The issuing judge must make a practical, common-sense determination from the totality of the circumstances presented whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The issuing judge is expected to draw reasonable inferences from the affidavits. *See United States v. Edmonson,* 962 F.2d 1535, 1540 (10th Cir.1992).

The reviewing court will uphold that determination if the supporting affidavits provide a substantial basis for finding that probable cause existed. *Gates,* 462 U.S. at 236, 103 S.Ct. 2317; *Finnigin,* 113 F.3d at 1185. "In applying the test enunciated in *Gates,* this Court has stated that the 'affidavit' should be considered in a common sense, nontechnical manner ..." *Edmonson,* 962 F.2d at 1540 (quoting *United States v. Massey,* 687 F.2d 1348, 1355 (10th Cir.1982) (citation omitted)).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317. The Supreme Court has found it sufficient to say that probable cause is more than a mere suspicion, but considerably less than what is necessary to convict someone. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *see United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.) ("The existence of probable cause is a 'common-sense standard' requiring 'facts sufficient to warrant a man of reasonable caution in belief that an offense has been committed.'") (quoting *United States v. Mesa–Rincon,* 911 F.2d 1433, 1439 (10th Cir.1990)) (quoting *Brinegar v. United States,* 338 U.S. 160, 174, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)), *cert. denied,* 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993).

 Probable cause to search a location does not depend on direct evidence or personal knowledge that evidence or contraband is located there. *United*

*States v. Hargus,* 128 F.3d 1358, 1362 (10th Cir.1997), *cert. denied,* 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). The affidavit need not aver that criminal activity actually occurred in that location. *See United States v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 874 (10th Cir. 1992). It is enough when the affidavit establishes a "nexus between the objects to be seized and the place to be searched" from which "a person of reasonable caution" would "believe that the articles sought would be found" there. *Hargus,* 128 F.3d at 1362. This nexus "may be established through ... normal inferences as to where the articles sought would be located." *United States v. Freeman,* 685 F.2d 942, 949 (5th Cir.1982). "[C]ourts often rely on the opinion of police officers as to where contraband may be kept." *$149,442.43 in U.S. Currency,* 965 F.2d at 874 (citations omitted).

In *United States v. Reyes,* 798 F.2d 380 (10th Cir.1986), the Tenth Circuit held an affidavit supported a magistrate judge's finding of probable cause where the affiant stated that defendant was a member of a drug trafficking conspiracy and that members of the conspiracy maintained records regarding their activities, but the affidavit did not indicate where those records were kept. The court stated: "It is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence." *Id.* at 382. Accord *United States v. Williams,* 897 F.2d 1034, 1039 n. 2 (10th Cir.1990); cf. *$149,442.43 in United States Currency,* 965 F.2d at 874 ("Where a suspect has no place of business separate from his residence, it is reasonable for an officer to conclude that evidence [*i.e.,* drug-related

business records] may be at the suspect's residence.").

In *United States v. Rowland,* 145 F.3d 1194, 1204 (10th Cir.1998), however, the Tenth Circuit emphasized that "[p]robable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity." *Id.*

Recently, the Tenth Circuit declined to join other circuits which have held, in cases involving drug traffickers, that "observations of illegal activity outside of the home can provide probable cause for the issuance of a search warrant for a suspect's house, even in the absence of an allegation that any illegal activity occurred in the home itself." *United States v. Nolan,* 199 F.3d 1180, 1183 (10th Cir.1999), citing cases. The Tenth Circuit additionally declined to join those circuits which expressly recognize that evidence of drug trafficking will likely be found where a drug dealer lives, choosing to leave those issues for another day. *Id.,* citing cases.

**Analysis**

■■■ Defendant's focus solely upon page two of the affidavit[1] is misplaced. There is nothing unusual about reading together the several components of an affidavit for search warrant, where properly incorporated or related by reference. *United States v. Rael,* 467 F.2d 333 (10th Cir.1972). It would be contrived to read the search warrant affidavit in isolation from the search warrant application, of which it is a part. *See* Gvmt. Exh. 1.

■■■ The search warrant application states that the items sought are located at "911 South Garfield, Chanute, KS a white

---

1. For purposes of convenience, the court refers to page two of the search warrant application as the "affidavit," and will later
address defendant's contention that this document was unsworn and is not in fact an affidavit.

house on the west side of the street." (Dk. 33, App.A.) In the section of the application which states "this affidavit and application is based on the following facts:" are the words "see attached affidavit." (*Id.*) The application expressly references the affidavit, but even had it not, the court would read the two together in determining probable cause.

The affidavit refers to the residence at 911 Garfield twice, by implication, by using the word "there." It states that a source had "confirmed that the finish(ed) product was there," and that officers had "been there before on search warrants and found product . . ." (*Id.*) No reasonable inference arises but that the location referred to as "there" is in fact the residence named by address and description in the accompanying search warrant application, *i.e.,* 911 South Garfield.

Additionally, although the statements in the affidavit do not relate personal knowledge of drug-related activities occurring at defendant's residence, they do show that defendant had the intent to manufacture methamphetamine and was acquiring the materials necessary to make it. From the nature of the activity related, the reasonable inference that defendant had the precursors at 911 South Garfield and would return to that location with the product later that evening, and the officer's statement that they had been there before and found product, it was reasonable for the magistrate to believe that product would be found at 911 South Garfield, although defendant intended to do his cooking in the country. Defendant's nexus challenge fails.

**Hearsay Information**

Defendant next alleges that the search warrant lacked probable cause because the supporting affidavit was based upon information from two informants, whose basis of knowledge was not stated therein.

In *Gates,* the Supreme Court abandoned the requirement that an officer set forth an informant's reliability in the affidavit. 462 U.S. at 238, 103 S.Ct. 2317. The court is to determine an informant's credibility or reliability and basis of knowledge under a flexible totality of circumstances standard. *United States v. Smith,* 63 F.3d 956, 961 (10th Cir.1995), *judgment vacated on other grounds,* 516 U.S. 1105, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996). "Veracity and basis of knowledge are not, however, rigid and immovable requirements in the finding of probable cause. A deficiency in one element may be compensated for 'by a strong showing as to the other, or by some other indicia of reliability.'" *United States v. Corral,* 970 F.2d 719, 727 (10th Cir.1992). Consequently, the affiant need not declare the informant's reliability when the informant's statements are corroborated by extrinsic information. *United States v. Sturmoski,* 971 F.2d 452, 457 (10th Cir.1992); *see United States v. Smith,* 63 F.3d at 961.

**Analysis**

The information in the affidavit, taken as a whole, supports the magistrate's finding that probable cause existed to issue the warrant. The Tenth Circuit has recently recognized that consistency between reports of two informants can help to validate both accounts. *United States v. Le,* 173 F.3d 1258 (10th Cir.1999). In *Le,* the Tenth Circuit found:

> The affidavit contained information provided by two different informants whose stories were remarkably consistent. "[C]onsistency between the reports of two independent informants helps to validate both accounts." *United States v. Schaefer,* 87 F.3d 562, 566 (1st Cir.1996); *see also United States v. Fulgham,* 143 F.3d 399, 401 (8th Cir.1998) (holding that the magistrate's finding of probable cause was supported by, among other

things, the "reciprocally corroborative" consistency in the information provided by two separate informants); *United States v. Pritchard*, 745 F.2d 1112, 1121 (7th Cir.1984) (stating that "[b]y telling consistent yet independent stories, the informants provide 'cross-corroboration,' and enhance the reliability of the application as a whole" (citations omitted)). Also, it was against the penal interest of the informants to provide this type of information to the police, a factor we have considered indicative of reliability. *See United States v. Sturmoski*, 971 F.2d 452, 457 (10th Cir.1992).

*Le*, 173 F.3d at 1266.

▆ Defendant alleges that there is no showing that the two informants here were independent, so as to warrant reciprocal corroboration. The affidavit shows, however, that one person was a confidential informant. Officer Barclay testified that this informant had been used before, and had been assigned a CI number. This CI spoke to Officer Barclay about the defendant on June 26 and 27th. The second individual had no CI number, and spoke to Officer Barclay on June 30th. No other facts were established at the hearing to show any relationship whatsoever between the two informants.

The facts that the two informants spoke to Officer Barclay on separate days, and that each occupied a different status with the police department, are sufficient to show the court that they acted independently in reporting the information to the officer. Defendant's speculation that the two may have been married and that one of the two may have had a motive to fabricate evidence against the defendant is just that.

Looking at the totality of the circumstances presented to the issuing magistrate, the court believes probable cause existed for the issuance of the state warrant. The combination of the informants'

reciprocal corroboration and the officer's prior use of the informants, whom the officer stated in the affidavit were "reliable" "reduced the chances of a reckless or prevaricating tale, [and] thus provid[ed] a substantial basis for crediting" the informants' assertions. *Gates*, 462 U.S. at 244–45, 103 S.Ct. 2317 (citations omitted). Taken together, all of the facts and corroborative information contained in the affidavit were sufficient to give the magistrate a "substantial basis" upon which to conclude that there was "a fair probability that contraband or evidence of a crime [would] be found" at 911 South Garfield. *Id.* at 238, 103 S.Ct. 2317.

**Leon**

In *U.S. v. Leon* the Court concluded that "the suppression of evidence obtained pursuant to a warrant should be ordered . . . only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918, 104 S.Ct. 3405. The purpose of the exclusionary rule is to deter police misconduct. *Id.* at 916, 104 S.Ct. 3405. Where an officer acting with objective good faith obtains a search warrant from a detached and neutral magistrate and the executing officers act within its scope, there is nothing to deter. *Id.* at 920–21, 104 S.Ct. 3405, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. Thus, the evidence seized pursuant to such a warrant should not be excluded from trial. This is so because—

> [i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination. . . . Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* at 921, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (internal brackets, quotations, and citations omitted).

■ Here, Officer Barclay called the County Attorney and presented the facts contained in the search warrant affidavit to him, prior to presenting the application to the magistrate. Even if the search warrant or application or affidavit were deficient in some manner, the court would not suppress evidence seized from 911 South Garfield, pursuant to *Leon.*

### Overbreadth of Warrant

■ Defendant next alleges that the warrant, Gvmt. Exh. 2, is facially overbroad in permitting a search for items related to the sale and distribution of methamphetamine, when the information supporting the warrant related solely to possession and manufacture of methamphetamine.

Assuming, without deciding, that the portion of the search warrant authorizing a search for items related to the sale and distribution of methamphetamine is constitutionally overbroad, suppression is not warranted.

■ "Where a warrant contains both specific as well as unconstitutionally broad language, the broad portion may be redacted and the balance of the warrant considered valid." *United States v. Hugoboom,* 112 F.3d 1081, 1087–88 (10th Cir. 1997); *United States v. Brown,* 984 F.2d 1074, 1078 (10th Cir.1993). "In such cases, only those items confiscated under the overbroad portion of the warrant are suppressed." *Id.*

Defendant has not identified any evidence that he claims was seized under the "distribution" portion of the search warrant, rather than under the possession or manufacturing portions of the search warrant, which provide a specific and particularized list of items for which police were authorized to search. For example, no items such as cash from drug sales, or records of drug sales were seized. *See* Gvmt. Exh. 3. Accordingly, defendant's motion to suppress evidence on the grounds that portions of the search warrant are overbroad shall be denied.

### Warrant Unsupported by "Oath or Affirmation"

■ Lastly, defendant contends that the warrant was not supported by "oath or affirmation" as is required by the Fourth Amendment.[2] Defendant asserts that the second page of the search warrant application, which contains all the facts establishing probable cause, was unsworn and does not constitute an affidavit.

It is clear from the face of the document, Gvmt. Exh. 1, that the second page is neither signed nor sworn nor notarized. There is no dispute, however, that this typewritten page which also contains one handwritten sentence, was intended by Officer Barclay to be the "affidavit" referred to on the first page of the search warrant application, in stating "see attached affidavit." (*Id.,* p. 1.) Officer Barclay testified that the second page was attached to the first page or otherwise provided to the magistrate prior to his issuance of the search warrant. The first page of the search warrant application is both signed by the officer, and sworn before the magistrate. That first page invites the affiant to "attach additional pages." (Instruction No. 3, bottom of page.)

The court finds that the first and second pages of the search warrant application should be read together, as the second

---

**2.** The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation ..."

page is properly incorporated or related by reference. See *United States v. Berisford,* 750 F.2d 57, 58 (10th Cir.1984) (reversing trial court's finding that the separate attachment was not a proper "affidavit," and that the attachment of the document to the form did not cure the defect.) Viewing the document in a nontechnical manner, the court finds that the warrant application and affidavit were adequate in form.

IT IS THEREFORE ORDERED that defendant's motion to suppress search of defendant's truck (Dk. 24), motion to sever counts (Dk. 27), and motion to suppress search at 911 South Garfield (Dk. 29) are denied.