**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CUI QIN ZHANG,

      Defendant-Appellant.

No. 05-3341

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 04-CR-40084-JAR)

---

Ronald E. Wurtz, Assistant Federal Public Defender for the District of Kansas (David J. Phillips, Federal Public Defender, and Kirk C. Redmond, Assistant Federal Public Defender, with him on the brief), Topeka, Kansas, for Defendant-Appellant.

Anthony W. Mattivi, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), District of Kansas, Topeka, Kansas, for Appellee.

---

Before **MURPHY**, **HOLLOWAY**, and **McKAY,** Circuit Judges.

---

**McKAY**, Circuit Judge.

---

As a black Lexus whizzed eastbound along I-70, swerving in and out of its lane, Sergeant Schneider of the Russell County Sheriff's office pulled over the speeding car. Upon approaching the Lexus, Sergeant Schneider found the driver, Ms. Zhang, and a male passenger later identified as Mr. Chen who was sitting in the rear passenger seat.

Sergeant Schneider asked for Ms. Zhang's driver's license and proof of the vehicle's insurance, which she promptly handed over to him. He asked Ms. Zhang where she was headed, and she responded that she was en route to Columbus, Ohio, to visit her family and that she owned the Lexus. Sergeant Schneider did not observe any luggage in the backseat, and he also noted that Ms. Zhang seemed very nervous and was fidgeting in her seat.

Upon confirming that Ms. Zhang owned the Lexus and issuing her a written warning, he asked Ms. Zhang if he could ask her a question. She agreed, and Sergeant Schneider inquired about the presence of contraband in her vehicle. Sergeant Schneider testified that Ms. Zhang responded, "No. Never. Never." He then asked for her permission to search the vehicle, to which she consented. After Ms. Zhang pressed a button to release the trunk lid, she walked back with Sergeant Schneider and stood behind the vehicle. Inside the trunk was one small yellow bag containing female clothing and a cardboard box.

Sergeant Schneider asked Ms. Zhang if he could open the box. When she agreed, he asked to her to step to the front of the vehicle. As Ms. Zhang walked

down the driver's side and Sergeant Schneider busied himself with opening the box, Ms. Zhang leapt into the car, slammed the door, and sped away. Sergeant Schneider jumped into his vehicle and gave chase to the Lexus, which was driving approximately 130 miles per hour. Nearly eight miles later, the Lexus exited the interstate and attempted a right turn at the top of the ramp. The vehicle lost control, flipped, and rolled down the other side of the off-ramp. The passenger, Mr. Chen, was transported by ambulance and Ms. Zhang was transported by Lifewatch helicopter to the hospital.

Strewn about the field were a number of packages shaped like bricks. These were found to contain cocaine. Officers also discovered a pillowcase which contained several packages of pills. The pills proved to contain MDMA, commonly known as Ecstasy. In all, there were fifteen packages of cocaine and seven packages of pills found among the wreckage, totaling approximately fifteen kilograms of cocaine and fifteen kilograms of MDMA.

Ms. Zhang was detained pretrial at a correctional facility in Leavenworth. A number of her calls from that facility were recorded. Because the language in the calls was a Chinese dialect, the Government asked Detective Sun, of the Los Angeles Police Department, to translate them. Prior to Detective Sun's testimony regarding the content of those calls, the parties stipulated that Ms. Zhang, during a phone call from Leavenworth, made a statement that should be translated as "[r]eally, didn't I used to tell you, after I came in, it's like . . . I knew the car had

drugs." The parties also stipulated that the phrase "it's like" is a transitional phrase similar to "you know" or other similar English transitional phrases. The court interpreter also read into the record the remainder of the call from which the phrase was extracted. During the remainder of the call, Ms. Zhang stated that "I know for a fact that I didn't do it."

After a jury trial, Ms. Zhang was convicted of possession with intent to distribute fifteen grams of cocaine and possession with intent to distribute fifteen grams of Ecstasy, each count a violation of 21 U.S.C. § 841(a)(1). She was sentenced to 180 months of imprisonment. Ms. Zhang appeals her conviction and sentence, arguing that (1) the evidence presented at trial was legally insufficient to sustain her conviction, and (2) the district court erred by failing to perform its gatekeeping function before admitting expert testimony that Ms. Zhang had confessed to the crime.

We review de novo an appellant's claim of insufficiency of the evidence to support her conviction. *United States v. Serrata*, 425 F.3d 886, 895 (10th Cir. 2005). Additionally, the evidence presented at trial is viewed in a light most favorable to the government "to determine whether any rational juror could have found the elements of the crime beyond a reasonable doubt." *United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005). The sufficiency challenge focuses entirely on Ms. Zhang's knowledge of the presence of drugs in the car.

Ms. Zhang's dangerous and precipitous decision to jump back into her car

and speed away at 130 miles per hour, disobeying Sergeant Schneider's direction to stay put, strongly conveys guilt. The Supreme Court has recognized that a defendant's flight is suggestive of wrongdoing. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (finding that "[h]eadlong flight–wherever it occurs–is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). Likewise, we have stated that "[i]t is well recognized that a defendant's intentional flight from police officers may be used as circumstantial evidence of guilt." *United States v. Fernandez*, 18 F.3d 874, 879 n.4 (10th Cir. 1994) (citing *United States v. Slater*, 971 F.2d 626, 636 n.4 (10th Cir. 1992)).

Testimony about Ms. Zhang's generally nervous behavior is another factor that the jury may have evaluated in considering the evidence presented. We have held, in a similar case, that nervous behavior, only when considered with all other evidence presented against the defendant, was sufficient for a rational jury to find the defendant guilty of possession with intent to distribute cocaine. *See United States v. Johnson*, 57 F.3d 968, 973 (10th Cir. 1995) ("Viewing the record in the light most favorable to the government and giving due deference to the jury's assessment of the evidence and witness credibility, we conclude that a rational jury could have found beyond a reasonable doubt that [defendant] possessed the mens rea required for both offenses.").

Last, the testimony of Mr. Chen implicating Ms. Zhang and revealing her

knowledge that the vehicle contained drugs was additional evidence that the jury could weigh to determine guilt. Although Mr. Chen's testimony has been characterized by Ms. Zhang as "blatantly inconsistent" and "inherently improbable," the record establishes that the jury was in the best position to try the evidence presented. For example, the jury heard from Mr. Chen that he experienced difficulty and confusion in seeking to understand the interpreter during his second pre-trial interview. We stand by our pronouncement that we "may not weigh conflicting evidence or consider the credibility of witnesses, *but must accept the jury's resolution of the evidence* as long as it is within the bounds of reason." *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004) (emphasis added).

For the reasons listed above–Ms. Zhang's flight, nervous behavior, and her co-passenger's incriminating testimony–we hold that the evidence presented at trial was legally sufficient to sustain her conviction.

As to Ms. Zhang's second claim, that the district court did not perform its gatekeeping function in admitting the expert testimony of Detective Sun, we review for abuse of discretion. *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Specifically at issue is the testimony of Detective Sun regarding a tape recording of Ms. Zhang's pre-trial telephone call from a correctional facility. During this phone call, it is uncontroverted that Ms. Zhang said, "Really, didn't I

-6-

used to tell you, after I came in, it's like . . . I knew the car had drugs." The trial record indicates that the court and counsel had long colloquies concerning how the statement from the telephone conversation should be admitted. Ultimately, it was both read by a court interpreter and played by recording to the jury. Later, Detective Sun testified that "I knew the car had drugs" is an independent phrase standing on its own and that Ms. Zhang could have used alternative language to state "after I came to jail, I learned that the car had drugs."

"While the district court has discretion in the *manner* in which it conducts its *Daubert* analysis, there is no discretion regarding the actual *performance* of the gatekeeper function." *Goebel v. Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). We went on to say in *Goebel*:

> Our holding recognizes that the district court need not recite the *Daubert* standard as though it were some magical incantation or apply all of the reliability factors suggested in *Daubert* and *Kumho* . . . . But we specifically hold that a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper.

*Id*. at 1088 (citations and quotations omitted). Here, a review of the trial record reveals the following two responses to Ms. Zhang's counsel's repeated objections to Detective Sun's qualification to interpret as a linguist: (1) "Well, I'll overrule. This is a native Mandarin Chinese Speaker who has been speaking English since he was 10 years old. And I take it . . . he's probably over 30 since he's been a police officer for 14 years;" and (2) "All right, I will overrule, with that going to

-7-

the weight of the evidence rather than admissibility." These statements, while certainly not the most expansive imaginable, nevertheless indicate the district court's performance of its gatekeeping function. The district court noted Detective Sun's age and the fact that he had grown up speaking Mandarin when it admitted him as an expert to testify about the meaning of a statement. We conclude that it was not error for Detective Sun to be qualified as an expert.

Consequently, we **AFFIRM** the judgment of the district court.