**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ENRIQUE CHAVARRIA,

Defendant - Appellant.

No. 06-2070

(D. New Mexico)

(D.C. No. CR-05-1329-RB)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Chief Judge, **ANDERSON** and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant/appellant Enrique Chavarria was indicted on one count of possession with intent to distribute five grams or more of methamphetamine, and

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

one count of possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, as well as aiding and abetting, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. His motion to suppress was denied following an evidentiary hearing. Chavarria proceeded to trial and was found guilty by a jury of both counts. He was sentenced to 151 months' imprisonment. Chavarria appeals his conviction. We affirm.

## BACKGROUND

On April 8, 2005, at approximately 9:50 p.m., Chaves County, New Mexico, Sheriff's Deputy Raul Valderaz was on patrol when he observed a pickup truck, driven by defendant Chavarria, cross through an intersection and narrowly avoid colliding with other vehicles. Valderaz accordingly pulled Chavarria's truck over. Deputy Valderaz approached the driver's side of the truck and asked Chavarria for identification. When Chavarria produced his identification card, the deputy noticed that Chavarria's hands were shaking "very uncontrollably." Tr. of Mot. to Suppress Hr'g at 5, R. Vol. III. Additionally, when the deputy asked for his insurance information, Chavarria passed over it several times before finally handing it to the officer.

When Valderaz asked for his driver's license, Chavarria responded he did not have one. Valderaz testified he told Chavarria not to be so nervous, that this

was a normal traffic stop and that he (Valderaz) would probably give Chavarria a citation for not having a driver's license.

Valderaz then returned to his patrol car to check the validity of Chavarria's identification card and to see if he had a valid driver's license. While sitting in his patrol car, Valderaz "noticed furtive movements inside [Chavarria's] vehicle," including Chavarria "reaching down." Id. at 6. Valderaz requested a back up and Deputy Ralph Moore responded.

Upon arrival, Deputy Moore briefly spoke to Valderaz. Moore also observed Chavarria "moving continuously" and "looking back at Deputy Valderaz and myself." Id. at 40. Moore walked up to the passenger side of the truck to watch Chavarria while Valderaz remained in his patrol car and wrote a citation for driving without a driver's license. After Valderaz finished writing the citation, he walked back to the driver's side of the truck and asked Chavarria to step out of the truck and walk to the front of Valderaz's patrol car. At that point, while in front of Valderaz's patrol car, Valderaz returned Chavarria's identification card to him, gave him the citation and then explained the citation.

While Valderaz was explaining the citation to Chavarria, Deputy Moore continued to stand by the passenger side of the truck, looking through the window into the cab of the truck. When Moore shone his flashlight into the cab, he saw a blue Wal-Mart bag lying on the passenger-side floorboard. The bag had been cut in half, the sides were gone and the handles were missing. Deputy Moore

-3-

observed bundles inside the bag, some containing a dark substance and some containing a white powdery substance. Based upon his ten years as a law enforcement officer, Moore believed the Wal-Mart bag contained narcotics.

When Valderaz finished explaining the citation to Chavarria, Valderaz asked if he could search the truck. Chavarria refused consent, stating that the truck was not his. Moore then walked back to where Valderaz and Chavarria were standing and asked Chavarria if he knew what a "plain view search" was. When Chavarria responded that he did, Moore told Chavarria about the bag visible on the passenger-side floor board and asked Valderaz to go look in the truck cab. Valderaz looked into the cab, using his flashlight, and also saw the bundles of what appeared to be narcotics inside the Wal-Mart bag.

While Valderaz looked into the truck cab, Moore conducted a pat-down search of Chavarria.[1] Moore found nothing during the search. After Valderaz saw the suspected narcotics, he told Moore to place Chavarria under arrest. Valderaz then seized the Wal-Mart bag. Inside the bag, he found bundles containing a crystal-like substance which he believed was methamphetamine and

[1]The precise sequence of events is not completely clear. At the suppression hearing, Valderaz testified that he returned Chavarria's ID and gave him the citation after Moore conducted the pat-down of Chavarria. Tr. of Mot. to Suppress Hr'g at 32, R. Vol. III. Moore testified that he conducted the pat-down search after Valderaz had returned the ID and explained the citation, id. at 45, although he testified that Chavarria had not yet signed the citation when the pat-down occurred. Id. at 52. In any event, it is clear that the pat-down occurred after Moore observed the contraband.

a white powdery substance believed to be cocaine. Laboratory analysis revealed that they were in fact methamphetamine and cocaine.

At trial, after the close of the government's case, Chavarria moved for a verdict of acquittal, arguing that the government had failed to show that he had possession and control of the contraband. The district court denied the motion, stating that the "nervousness described by the two officers, if believed, could be the link between him and the drugs of guilty knowledge." Tr. of Jury Trial at 106, R. Vol. IV. The jury found Chavarria guilty, and he was sentenced to 151 months' imprisonment.

Chavarria appeals, arguing (1) there was insufficient evidence of possession and knowledge of the contraband, where the defendant and contraband were in a borrowed vehicle and the government relied exclusively on the defendant's nervousness to establish possession and knowledge; and (2) the district court erred in denying Chavarria's motion to suppress because the contraband was found during a prolonged detention conducted ostensibly to protect officer safety even though the officers testified they did not fear for their safety.

## DISCUSSION

### 1. Sufficiency of the evidence

"We review challenges to the sufficiency of the evidence de novo." United States v. Isaac-Sigala, 448 F.3d 1206, 1210 (10th Cir. 2006). In conducting that review, "we consider only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Id. (further quotation omitted). "A conviction should be reversed only if no reasonable juror could have reached the disputed verdict." Id. (further quotation omitted).

Chavarria argues there was insufficient evidence establishing that the contraband was his or that he was even aware it was in the truck. He further argues that the truck was not his and he presented evidence to the jury that the truck's owner, Rudy Archuleta, "was stopped two months after Chavarria's stop, in another Archuleta-owned truck, in the same city, with the same type of narcotics (methamphetamine and cocaine), roughly the same amount of methamphetamine (48 grams in the vehicle Chavarria was driving, 66 grams in the vehicle Archuleta was driving), and with the narcotics located in the same place in the truck (floorboard)." Appellant's Opening Br. at 13. Chavarria argues the only evidence establishing a nexus between Chavarria and the drugs was his

alleged nervousness and that is insufficient. We disagree. The record reveals sufficient evidence linking Chavarria and the drugs.

First, while Chavarria was not the owner of the truck, he was the driver and sole occupant when the drugs were discovered in plain view in the truck cab. We have "held that it is permissible to infer that the driver of a vehicle has knowledge of the contraband found within it." United States v. Cota-Meza, 367 F.3d 1218, 1224 (10th Cir. 2004). The fact that the actual owner was himself later found also transporting drugs in a different truck does nothing to minimize Chavarria's culpability when he was found with drugs in the borrowed truck he was driving.

Second, both officers testified that they observed Chavarria, after his truck was pulled over, moving around in the truck, reaching down towards something, and generally engaging in what appeared to be furtive movements. Such movements can constitute evidence linking the person making the furtive movements in a vehicle to contraband in the vehicle. See United States v. Bowen, 437 F.3d 1009, 1015-16 (10th Cir. 2006) (noting that among the evidence supporting a nexus between defendant and contraband in car was officers' observation of defendant making "furtive movements around the passenger seat"); United States v. Springfield, 196 F.3d 1180, 1183 (10th Cir. 1999) (noting that "furtive actions" in rear of van supported nexus between defendant and contraband in van).

Third, Chavarria was extremely nervous throughout his encounter with law enforcement authorities. We have on numerous occasions discussed the significance of a defendant's nervousness when determining whether there was reasonable articulable suspicion to continue an investigative stop. In general, we have held that the significance of a defendant's nervousness can vary, depending on the particular circumstances and the degree of nervousness. See, e.g., United States v. Bradford, 423 F.3d 1149, 1157 (10th Cir. 2005) ("[W]e have repeatedly emphasized that nervousness and its signs should not be overcounted in our analysis."); United States v. West, 219 F.3d 1171, 1179 (10th Cir. 2000) (noting extreme and continued nervousness "is entitled to somewhat more weight"); United States v. Wald, 216 F.3d 1222, 1227 (10th Cir. 2000) (holding nervousness is "of limited significance" in determining whether reasonable suspicion exists); but cf. United States v. Bloom, 975 F.2d 1447, 1458 (10th Cir. 1992) (noting that officer's statement that defendant was very nervous was "nothing more than an inchoate suspicion or hunch"), overruled on other grounds, United States v. Little, 18 F.3d 1499 (10th Cir. 1994( (en banc). Our reservation about giving too much weight to a defendant's nervousness during an investigative stop is partially explained by the fact that "nervousness is a sufficiently common—indeed natural—reaction to confrontation with the police." United States v. Santos, 403 F.3d 1120, 1127 (10th Cir. 2005).

In this case, by contrast, we are faced with the question of whether a defendant's nervousness during a traffic stop can be used not just to provide articulable suspicion to further detain the defendant, but as evidence that he knowingly possessed contraband in the vehicle. The few cases from our circuit suggest that it can. For example, we have held that a defendant's nervousness, with no police presence, "specifically directed at [a] package" can be used by a jury as evidence that the defendant "knew the package contained a controlled substance." United States v. Johnson, 57 F.3d 968, 972 (10th Cir. 1995); see also United States v. Cui Qin Zhang, 458 F.3d 1126, 1128 (10th Cir. 2006) ("[N]ervous behavior, . . . when considered with all other evidence presented against the defendant, [is] sufficient for a rational jury to find the defendant guilty of possession with intent to distribute cocaine."); United States v. Lazcano-Villalobos, 175 F.3d 838, 844 (10th Cir. 1999) (noting that defendant's nervousness at border checkpoint is, along with other factors, evidence of knowledge of cocaine hidden in car). Thus, the jury could infer from Chavarria's extreme nervousness that he was aware of the contraband on the truck floor.

In sum, we hold that there was sufficient evidence from which a reasonable jury could conclude that Chavarria knowingly possessed the contraband found on the floor of the truck.

**2. Denial of motion to suppress**

"In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." United States v. Ladeaux, 454 F.3d 1107, 1110 (10th Cir. 2006) (further quotation omitted).

Chavarria argues the district court erred in failing to suppress the contraband "when it was discovered during a prolonged detention of Chavarria conducted ostensibly for 'officer safety' purposes, notwithstanding explicit officer testimony that there was no suspicion of danger." Appellant's Br. at 16. A routine traffic stop is like an investigative detention and is accordingly governed by the principles set out in Terry v. Ohio, 392 U.S. 1 (1968). "To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first whether the officer's action was justified at its inception, and second whether it was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Guerrero-Espinoza, 462 F.3d 1302, 1307 (10th Cir. 2006) (further quotation omitted). Chavarria does not challenge the validity of the initial stop in this case. His argument is that the officers unlawfully prolonged the stop beyond the time justified by the reason for the stop.

During a routine traffic stop, "a trooper may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation." Id. Once the trooper has accomplished those tasks, "a driver must be allowed to proceed on his way unless reasonable suspicion exists that the driver is engaged in criminal activity or the driver consents to additional questioning." Id.

Chavarria concedes that "at the time that [he] was extracted from his vehicle, all that was left to do was to present the citation and return Chavarria's documents." Appellant's Br. at 18. By his own admission, therefore, Chavarria was removed from his vehicle prior to his receipt of the citation. Thus, the investigative detention had not yet ended. And while Chavarria challenges the officers' authority to remove him from the vehicle, they were entitled to do that. "An officer may order the driver and passengers out of the vehicle in the interest of officer safety, even in the absence of any particularized suspicion of personal danger." United States v. Holt, 264 F.3d 1215, 1222 (10th Cir. 2001) (en banc).

Further, it appears that Deputy Moore observed the contraband in plain view on the vehicle floor while Chavarria was outside the vehicle receiving the citation.[2] Once Moore observed the drugs, the officers had reasonable articulable suspicion to further detain him and search him and/or his vehicle. Thus, Moore's

---

[2]Chavarria does not dispute that the contraband was in plain view. The officers testified that the interior of the car was visible because of the lights from their patrol cars, the street lights and their flashlights.

pat-down of Chavarria was justified after the contraband was spotted.  Moreover, Chavarria's conduct justified the pat-down:  as Deputy Moore explained, "[h]e kept placing his hands in his pockets, and I asked him to keep his hands out of his pockets.  And that's when I conducted a pat-down search."  Tr. of Mot. to Suppress Hr'g at 45, R. Vol. III.[3]

In sum, the record reveals that the officers in this case properly stopped Chavarria's vehicle after observing a violation of the traffic laws.  The investigative detention proceeded properly, and without undue delay, until one of the officers observed contraband in plain view, which, in turn, justified further investigation.  The district court properly denied Chavarria's motion to suppress.


## CONCLUSION

For the foregoing reasons, Chavarria's conviction is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

_____

[3]While Chavarria asserts the officers testified at the suppression hearing that they did not believe Chavarria ever posed a safety threat, he has misread that testimony.  The officers repeatedly testified that they removed Chavarria from the truck because of safety concerns, and they did not let him return to the truck because they did not know whether he had weapons in the truck.  Moreover, the pat-down was to assure the officers that Chavarria had no weapons on his person.

-12-